**Frank Augustus COBB, Jr., Appellant–Defendant**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–9109–CR–271.

Court of Appeals of Indiana, Third District.

Jan. 29, 1992.

---

Nathaniel Ruff, Appellate Public Defender, Crown Point, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

*I. Facts and Procedural History*

This is an appeal from a jury verdict and judgment in a criminal case in which the defendant was found guilty of conspiracy to commit theft, conspiracy to commit fraud on a financial institution, and fraud on a financial institution. We affirm.

On January 16, 1991, an information and a probable cause affidavit were filed against .defendant Frank A. Cobb (Cobb), Jr. The information contained four counts:

1. Count I charged Cobb with conspiracy to commit theft, a class D felony;

2. Count II charged Cobb with conspiracy to commit fraud on a financial institution, a class C felony;

3. Count III charged Cobb with theft, a class D felony; and

4. Count IV charged Cobb with fraud on a financial institution, a class C felony.

The State alleged that Cobb and an accomplice, Rosita Collazo (Collazo), stole checks from the Lake County Clerk's Office, forged signatures on those checks, and deposited them into a business account established by Cobb and Collazo.

Both Cobb and the State set forth basically the same set of facts:

Collazo was employed as a deputy clerk for Circuit Court Clerk Robert Antich. During her employment, Cobb and Collazo lived together. Cobb suggested that Collazo take some blank checks from the Clerk's Office so that the two of them could start a business. In June of 1990, Collazo took six checks from the Clerk's Office and gave them to Cobb.

Cobb and Collazo established a business known as R & J Data Processing (R & J) in the early spring of 1990. Cobb told Collazo how to set up a bank account in the name of R & J at the Mercantile National Bank (Bank) in Hammond, Indiana. At Cobb's suggestion, Collazo used fictitious names for the two of them in setting up the account.

Cobb typed in R & J as the payee on the checks Collazo obtained from the Clerk's Office. He signed the names of the Clerk and another employee of the Clerk's Office to the checks, endorsed the checks, and deposited them in the R & J account. Collazo and Cobb made withdrawals by using R & J checks signed in their fictitious names. After four checks from the Clerk's Office were forged and deposited, Collazo and Cobb were arrested.

Pursuant to a plea agreement with the State, Collazo pled guilty to theft. Her sentencing was continued. The plea agreement provided that the State would recommend to the court that Collazo receive probation if she fully cooperated with the State.

The case proceeded to trial on May 13, 1991, in the Lake County Superior Court. During trial, Collazo identified various checks and deposit slips related to the crimes charged. When the State offered the documents into evidence, Cobb objected, noting that the documents constituted hearsay which rendered the documents inadmissible without proper authentication. The trial court agreed and sustained Cobb's objection, noting that the State should enter the records into evidence through the proper Bank representative.

On the following day of trial, the State called Arthur King (King), a vice president and internal auditor of the Bank, through which Group Exhibit JJ, photocopies of checks and deposit tickets relating to the alleged crimes and which had been previously marked as exhibits at trial, were offered for admission. Cobb objected to admission of the records on the basis that an improper foundation had been laid. Initially, the court sustained his objection, noting that King had failed to testify that he was the keeper of the records. After the State elicited testimony from King that he was the record-keeper, Cobb took King on *voir dire*, and King stated that he did not actually work in the record-keeping department, but that he was the record-keeper for purposes of trial and as department head of investigations within the auditing department. Cobb once again objected to lack of foundation for admission of the documents. However, the trial court overruled Cobb's objection and admitted the documents. On May 14, 1991, a jury returned a verdict against Cobb, finding him guilty on counts I, II, and IV, and not guilty as to count III.

Cobb now appeals alleging that the documents showing deposits into the R & J account and withdrawals from the account were admitted in violation of the hearsay rule because the State failed to lay a proper foundation for the records under the business record exception.

## II. Issue

■ The issue on appeal is whether the trial court properly allowed admission of the copies of checks and deposit slips into evidence via the business record exception to the hearsay rule through King, a Bank officer and auditor, who at trial stated he was familiar with the Bank's record keeping procedures in general and the copies at issue in particular, even though King did not actually prepare the records or their contents or work in or supervise the record keeping department of the Bank.[1]

---

1. Cobb also alleges that the State did not show that the documents were placed in the record by an authorized person, that such person had personal knowledge of the transaction represented by the documents at the time of entry, and that the records were kept in the routine course of business of the Bank. However, King, in fact, did testify as to these matters (See R. pp. 253–255). While his testimony may have been in the form of conclusory answers to foundational questions posed by his counsel, we find that it was sufficient to satisfy the requisite foundational elements. Cobb also failed to present any evidence or elicit any testimony to the effect that King did not, in fact, have personal knowledge of the foundational elements. It is well settled that, absent evidence to the contrary, courts may presume entries in business records

## III. Discussion and Decision

Cobb asserts that King was not the proper record-keeper to authenticate the business records at issue in this case. He claims the trial court erred by allowing the documents into evidence under the business record exception of the hearsay rule. We disagree.

Generally, the sufficiency of an evidentiary foundation is a matter left to the trial court's discretion. We will reverse only upon a showing of an abuse of discretion by the court. *Sutton v. State* (1981), Ind.App., 422 N.E.2d 430, 432. We find that the trial court committed no error in finding that a sufficient foundation had been laid for the admission of the copies of checks and deposit slips into evidence.

As both the State and Cobb point out, we have recently set forth the necessary foundational elements of the business records exception to the hearsay rule as follows:

> The business records exception to the hearsay rule permits the admission of documentary evidence if it is identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having a duty to so record and personal knowledge of the transaction represented by the entry.

*Getha v. State* (1988), Ind.App., 524 N.E.2d 325, 327.

Cobb's primary contention is that King was not the proper party to authenticate the records because he was not the entrant or supervisor of the entrant, and was not involved in the Bank's general keeping of the records. Cobb argues that King's familiarity with the Bank's record-keeping practices as an officer and auditor in the Bank is not enough to qualify him as a proper sponsor of the records. We disagree.

While in *Getha* the foundational requirement that the record be identified by "its

entrant or one under whose supervision it is kept," reflects the common practice of the records being identified at trial by their entrant or a supervisor of the entrant, we have previously held that the requirement should not be misinterpreted to mean that only an entrant or his supervisor can identify the records at trial. Specifically, we noted:

> While the most commonly encountered witness today may be a person in authority of the record-keeping department of the business, he or she is not the only witness who can provide the necessary foundation for admission of a business record. This foundation can be established by *anyone* who possesses, with respect to the particular document in question the knowledge of the ... [required foundational elements]. This could be the entrant, the entrant's supervisor, co-workers, a records custodian or any other such person. What we demand is not a witness with a formalistic title but one with a functional understanding of the record-keeping process of the business with respect to the specific entry, transaction or declaration contained in the document.

*Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 221, *trans. denied; See also, Cardin v. State* (1989), Ind.App., 540 N.E.2d 51, 55, *trans. denied; Hatton v. State* (1986), Ind.App., 498 N.E.2d 398, 401; *Jackson v. Russell* (1986), Ind.App., 498 N.E.2d 22, 37, *trans. denied; Wilson v. Jenga Corp.* (1986), Ind.App., 490 N.E.2d 375, 377.

The key requirement is that the witness through which a business record is to be admitted must have personal knowledge of the various elements of the foundation. *Id.* A sponsor of the exhibit need not have made the entry, filed it, or have first hand knowledge of the transaction represented at the time of the entry. Instead, he or she need only show that it is part of the records kept in the routine

---

were made by a person who had a duty to make the record and may presume that person had personal knowledge of the transaction represented by the record. *Lyons v. State* (1987),

Ind., 506 N.E.2d 813, 817; *Accord Knuckles v. State* (1990), Ind.App., 549 N.E.2d 85, 87. We find no error in regard to these issues.

course of business and placed in the record by one authorized to do so, who had personal knowledge of the transaction represented at the time of entry. *Getha*, 524 N.E.2d at 327. Therefore, the foundational elements that a witness through which a business record is to be admitted must have personal knowledge of are as follows:

1) That the record is the original or first permanent entry;
2) That it was made in the ordinary course of business;
3) That it was made at or near the time of the occurrence recorded,
4) By a person with personal knowledge of the matters recorded, and
5) A business duty to record them.

*Wilson*, 490 N.E.2d at 376. Accordingly, we clarify and modify the foundational requirements as they were listed in *Getha* to

the extent they are inconsistent with this holding, and reaffirm our listing of the requirements as stated in *Wilson*.[2]

In this case, the record reveals testimony by King that he was familiar with the Bank's operations and record-keeping system (R. p. 249). At trial, he identified Group Exhibit JJ which consisted of copies of the checks and deposit tickets that had been previously marked as exhibits for trial. King stated he had seen the records before in the course of his involvement with investigations at the Bank, and that he recognized the documents within the group exhibit as statements and copies of checks and deposit slips that were posted to the R & J account (R. p. 252). He also testified that the Bank kept records of the checks at issue and the transactions involv-

---

**2.** A review of the cases discussing the foundational elements of the business records exception to the hearsay rule reveals a lack of unanimity in Indiana as to the necessary elements. For example, our courts have included as a foundational element in some decisions the common law requirement that "the witness who had knowledge of the facts must be unavailable." *Smith v. State* (1983), Ind., 455 N.E.2d 606, 607, *citing Wells v. State* (1970), 254 Ind. 608, 261 N.E.2d 865; *See also Bryce v. State* (1989), Ind.App., 545 N.E.2d 1094, *trans. denied* (supervisor of department of toxicology who reviewed and signed off on test results, but who did not conduct the tests and was not the records custodian, was not the proper party to identify records at trial where the state did not show that a witness who had knowledge of the tests was unavailable to testify). However, other decisions have failed to address the unavailability issue and have excluded the unavailability element when listing the necessary foundational elements of the business record exception. *See e.g., Perry v. State* (1989), Ind., 541 N.E.2d 913, 918; *Smith v. State* (1983), Ind., 455 N.E.2d 346, 353. *Thompson v. State* (1979), 270 Ind. 442, 386 N.E.2d 682, 684; *Crosson v. State* (1978), 268 Ind. 511, 376 N.E.2d 1136, 1141. Therefore, it is unclear whether unavailability is a necessary element to establish a foundation for the business record exception to the hearsay rule. Some commentators in Indiana have concluded that there is no requirement that the sponsor of a business record prove the actual entrant to be unavailable. *See* Tanford & Quinlan, *Indiana Trial Evidence Manual* § 20.3 (2d ed. 1991 supp.); *But see* Miller, *Indiana Evidence* § 803.-106, p. 189 (1984) (listing unavailability as an element, but stating that it has been virtually eliminated as an element by *Wells*, 261 N.E.2d at 865, in which the Indiana Supreme Court recognized that the unavailability requirement

is satisfied if the witness is present and unable to recall the facts sufficiently to testify from memory). Furthermore, although finding the unavailability element met by the facts of the case, Judge Ratliff recently noted that unavailability could be met by a minimal showing and that it is not a crucial element under the business record exception to the hearsay rule because the "heart of the rule ... is the requirement that the observation, reporting, and the recording of the facts *all* be made by someone in the regular course of the business". *Jones v. Marengo State Bank* (1988), Ind.App., 526 N.E.2d 709, 715, *quoting Wells* 261 N.E.2d at 870. We also believe that the unavailability element should not be considered a significant element of the business record exception, especially in the absence of evidence tending to show that the record is not authentic. As one commentator has noted, "[t]oday, the inconvenience of calling those with firsthand knowledge and the unlikelihood of their remembering accurately the details of specific transactions convincingly demonstrate the need for recourse to their written records, without regard to physical unavailability". McCormick On Evidence § 306, p. 720 (2d ed. 1972). We also note that the Federal Rules of Evidence no longer contain unavailability as a requirement. *See* Fed. R.Evid. 803(6). However, while we do not list it as a required element under the business record exception in this case, we do recognize that our supreme court has not *expressly* abolished the requirement. In the case at bar, Cobb did not make a specific objection regarding unavailability at trial or raise or argue the issue on appeal. Therefore, regardless of its status, the unavailability element does not affect the outcome of this case.

ing the R & J account (R. p. 252). Furthermore, King testified that the copies of the checks and deposit slips were true and exact copies obtained from the Bank's film records of the originals, that they were kept in the course of regularly conducted business activity at the bank, that they were made by a person with knowledge of or made from information transmitted by a person with knowledge of the acts and events appearing on them, and that the records were made at or near the time of the acts and events appearing on them (R. pp. 253–255). King also testified that as an officer of the Bank he appears in court proceedings regarding Bank records and, as head of his auditing department he oversees the records that his department keeps concerning the Bank's investigations (R. p. 257). Finally, the record reveals that as an auditor of the Bank, King is responsible for internal controls, procedures, and seeing that other systems within the Bank are maintained and are working properly (R. p. 272).

Accordingly, we find that King was a proper sponsor of the records, although he was not the entrant of the record or the entrant's immediate supervisor. The evidence reflects that he had sufficient knowledge of the Bank's record keeping procedures and business practices in general, and in regard to the documents at issue in particular, to satisfy the required foundational elements of the business record exception to the hearsay rule.

The trial court's judgment is affirmed.

STATON and SHARPNACK, JJ., concur.