**Ray BRIDWELL, Appellant–Defendant**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–9306–CR–225.

Court of Appeals of Indiana,
Fifth District.

Sept. 28, 1994.

Transfer Denied Nov. 30, 1994.

Annette Fancher Sheldon, James P. Sheldon, The Sheldon Firm, P.C., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., Indianapolis, for appellee.

BARTEAU, Judge.

Ray Bridwell appeals from two convictions of Class C felony Child Molesting and one conviction of Class D felony Child Molesting. The sole issue presented for consideration is whether delay in bringing Bridwell to trial resulted in denial of his right to a speedy trial. We affirm.

### FACTS

On October 25, 1991, the State filed the child molesting charges against Bridwell. Bridwell was arrested on October 28, 1991, and released on bond. On April 27, 1992, the

State filed and the court granted the State's motion to dismiss. On May 7, 1992, the State refiled the charges. Beginning on September 23, 1992, and four times thereafter, the court continued the case due to a congested calendar. It was finally tried on April 22, 1993. Bridwell's objections to the delay properly preserved the issue for review.

## DISCUSSION

Bridwell contends that he should be discharged due to·denial of his right to a speedy trial. He presents his argument both in terms of the one year rule contained in Ind. Crim.R. 4(C) and in relation to the state and federal constitutional right to a speedy trial. The determinative disputed time period in this appeal is a 209–day delay which elapsed due to court congestion. If the 209–day delay is attributable to the State, Bridwell must be discharged under Crim.R. 4(C) because he was not brought to trial within one year of his arrest and none of the statutory exceptions allow the State a reprieve from the technicality of the rule. Crim.R. 4(C). If that time period is not chargeable to the State, then Bridwell is not entitled to discharge under Crim.R. 4(C) and may only prevail on his appeal if this court determines that he was deprived of his "right to a speedy and public trial" under the Sixth Amendment to the United States Constitution (as applied by the Fourteenth Amendment) or his right to have justice administered "speedily, and without delay" under Article I, Section 12 of the Indiana Constitution. We find no violation of Crim.R. 4(C) nor of the state and federal speedy trial guarantees and consequently affirm.

## Criminal Rule 4(C)

Indiana Criminal Rule 4(C) provides:

**(C) Defendant Discharged.** No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

The trial court used a common preprinted form to formalize its continuance of the case due to court congestion. The form contains blanks for the date the case is currently set, the date the court removes it from the calendar due to congestion, the date of the new trial setting and the date of the final pretrial conference.· It also contains language to the effect that the case is being removed due to congestion and is being reset at the "next earliest available setting." R. 27, 29, 34, 36, 37. Thus, the use of the form satisfies the technicalities of the court congestion exception to Crim.R. 4(C).

While the court's order technically complies with Crim.R. 4(C), Bridwell contends that he is nevertheless entitled to discharge. Bridwell argues that despite the court's order citing congestion, the congestion did not exist as the cases remaining on the calendar for those days Bridwell's case was continued should not have been given priority over his case. Bridwell relies on *Raber v. State* (1993), Ind.App., 622 N.E.2d 541 (appeal after remand 626 N.E.2d 506). In *Raber*, defendant's trial was continued as a result of court congestion by means of a similar preprinted form. Our First District remanded the case to the trial court with instructions for the court to document the nature of the congestion justifying the court's continuance of the case.

Our decision is facilitated, albeit no doubt unintentionally, by Bridwell's appellate attorney's diligence and thoroughness. Counsel provided this court with certified copies of

the case chronologies for the cases appearing on the court's calendar on the days Bridwell's case was scheduled to proceed to trial. These documents were prepared in support of Bridwell's contention that congestion did not exist and that the cases given preference over his were not entitled to the same. The records do demonstrate an error at one time by the court and that in general the cases remaining on the court's docket on the days that Bridwell's trial had been scheduled had either not been pending as long as his or had lesser speedy trial concerns. What the records also demonstrate is that it is unrealistic to expect a criminal trial judge to be cognizant of the mathematical and chronological status of each case in relation to all others pending and to schedule them accordingly.

The five case chronologies provided us span 43 pages. Calculating the applicable dates for Crim.R. 4(C) purposes, the days charged to the State, days charged to the defendant and other relevant factors is complicated and time consuming. Further, the status of pending cases may change on a daily basis. Our trial courts have neither the time nor the capability to control and schedule cases in this manner.

■ Ideally, the oldest cases should be tried first, those defendants with speedy trial requests given priority, and no case left pending more than one year. While our trial judges should strain to meet that ideal, failure to do so in this case did not invalidate the statutory exception permitting extension past the one year mark in the event of court congestion. We decline to follow *Raber* to the extent it requires a trial court to provide documentation of court congestion. Absent an allegation that the court congestion continuance was merely subterfuge, we accept the court's affirmation of congestion. The exact nature of that congestion is immaterial.

That is not to say that repeated continuances due to court congestion will never be held to have violated Crim.R. 4(C) or to have transcended constitutional boundaries. There is a point where delay, regardless of the justification, violates the right to a speedy trial. Because the delay was not excessive in this case, that point was not reached.

### Constitutional Right to a Speedy Trial

Bridwell also argues that the delay in his case violated both his federal and state constitutional right to a speedy trial. In *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, the United States Supreme Court established four criteria which should be considered in determining whether there was a violation of the speedy trial right. Those four are: (1) the length of the delay; (2) the reasons for the delay; (3) the timeliness and vigor of demand for a speedy trial; and (4) the prejudice, if any, the delay caused the defendant. *Id.*, at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 116.

■ Bridwell's argument centers around the 209 days of delay caused by the court congestion continuances, the prosecutor's dismissal and refiling of the charges, and the death of Bridwell's brother, a witness who could have provided testimony relative to the victim's motivation to lie. For the same reasons we did not find the court congestion continuances violative of Crim.R. 4(C), we do not find that they unfairly impinged on Bridwell's right to a speedy trial.

As to the prosecutor's dismissal and refiling of the charges, at an early trial setting the prosecutor moved to amend the information. When the trial court denied the motion, the prosecutor indicated the State was unprepared to proceed on the information as it stood and would dismiss and refile the charges. Bridwell contends that had the State been ready to proceed to trial on that date, he would have been tried within the one year period and received a speedy trial. He cites *Crosby v. State* (1992), Ind.App., 597 N.E.2d 984, in support. In *Crosby*, the prosecutor filed amended charges two weeks prior to the expiration of the Crim.R. 4(B) period and untimely produced substantial discovery material. This court held that the defendant could not be tried within the Crim. Rule 4(B) period because of the prosecutor's delay and negligence and Crosby was ordered discharged. *Id.* The instant case is distinguishable in that Bridwell's case *was* rescheduled within the Crim.R. 4(C) time period following the prosecution's dismissal

and refiling. Thus, the prosecutor's actions did not cause Bridwell's trial to occur outside the statutory one year. The case was continued from that point due to court congestion, which is not attributable to the prosecution.

As to the harm caused by the delay, we recognize that the death of Bridwell's brother prejudiced his defense. However, the prejudice was not insurmountable and considering *all* of the *Barker* factors, we do not find that Bridwell's right to a speedy trial was violated.

### *Dismissal and Refiling*

Bridwell additionally raises the issue whether the 29–day delay caused by the State dismissing and then refiling the charges should be chargeable to the State for Crim.R. 4(C) purposes. Because this 29–day period would only be determinative if the 209–day period were also attributed to the State, we need not address the argument except to note that dismissing and refiling charges does not stop the speedy trial clock—it merely tolls it for the actual days between dismissal and refiling. *See Hornaday v. State* (1994), Ind.App., 639 N.E.2d 303.

The convictions are affirmed.

RUCKER, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, dissenting.

It may be, as the majority observes, that "it is unrealistic to expect a criminal court judge to be cognizant of the mathematical and chronological status of each case in relation to all others pending ..." Maj.op. at 439. Nevertheless, someone in a position of responsibility must take such steps as are necessary to assure defendants of their speedy trial rights. Whether that be the State in the person of the prosecutor, or the court in the person of an administrator, or other person utilizing modern and systematic technological assistance, the fact remains that it must be done. It is not the obligation of the defendant to monitor and schedule the court's trial calendar. It is the court's function to protect the right to speedy trial. *Simpson v. State* (1975) 3rd Dist., 165 Ind.

App. 285, 332 N.E.2d 112. The right to speedy trial exists. Unless constitutional interpretation changes or unless Criminal Rule 4 is changed, the judicial branch must conduct its business in an efficient fair manner. It will not suffice to say that such requirements are burdensome to judges.

The majority errs in rejecting *Raber v. State* (1993) 1st Dist.Ind.App., 622 N.E.2d 541. The practical difficulties in requiring trial courts to document reasons for trial continuances are minimal at best. When a trial court enters an order continuing a scheduled trial it is not unduly burdensome for that court to add a sentence or two setting forth the nature of the court congestion which dictates the continuance.

In any event, it would appear that on each date upon which *State v. Bridwell* was scheduled for trial but was continued for "court congestion", a different case, which also had been set for trial on the same date, was commenced. Although the "congested calendar" orders in this case do not indicate that the various new trial settings were anything other than first choice settings, the strong implication is to the contrary. Otherwise it is doubtful that the other cases would have been tried in preference to *State v. Bridwell.* It would seem logically unassailable that a setting less than a first choice setting cannot afford avoidance of the speedy trial time constraints by resort to the "court congestion" exception of Crim.Rule 4(C). To reason otherwise would permit a particular defendant to be scheduled for trial countless times as a fifth choice setting. In such instance cause for a "court congestion" continuance would be virtually assured. Any postponement of a case scheduled for trial lower than a first choice setting does not qualify as a "court congestion" cause for continuance. Any such delay may not be attributed to the defendant. The speedy trial time period is not tolled during any such delay.

I do not assume that Bridwell's case was rescheduled for less than a first choice setting; but neither may I assume that the various settings, or any one of them, was as a first choice setting. Accordingly, the rationale of *Raber v. State* is particularly applicable here.

I would hold this appeal in abeyance and would remand to the trial court to make written findings as to each "court congestion" trial setting continuance and to certify such findings to this court; or in the alternative to order the defendant discharged.