**John PAYNE, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee.**

No. 49A02–9405–CR–00288.

Court of Appeals of Indiana.

Dec. 8, 1995.

Transfer Denied Jan. 31, 1996.

S. Sargent Visher, Indianapolis, for appellant.

Pamela Carter, Attorney General of Indiana, Joseph F. Pieters, Deputy Attorney General, Office of the Attorney General, Indianapolis, for appellee.

## OPINION

SULLIVAN, Judge.

John Payne (Payne) appeals his jury trial convictions of robbery as a class B felony,[1] resisting law enforcement,[2] and the determination that he is an habitual offender.[3]

We affirm.

Payne presents two issues for our review, which we restate as follows:

(1) whether he is entitled to discharge because the State violated his right to an early trial;

(2) whether the trial court erred in finding him to be an habitual offender.

The facts most favorable to the trial court's judgment reveal that on January 13, 1993, a person matching Payne's description robbed the Safeway grocery store at the corner of 56th and Illinois Streets in Indianapolis, taking approximately $200 from a cash register. A police officer who happened to be across the street noticed the suspect running from the store. The officer gave chase, radioed for assistance, and ordered the suspect to stop. The suspect fled by car for a short distance, then exited the car and headed west in the direction of Capitol Avenue. Officers apprehended Payne as he walked along Capitol Avenue a few blocks from the scene of the robbery. At that time, Payne had in his possession $206.25. The officer who initially gave chase identified Payne as the person whom he saw running from the store. The store clerk also identified Payne as the robber during a show-up identification.

On January 14, 1993, the State charged Payne by information with robbery as a class B felony and resisting law enforcement. On January 21, 1993, Payne filed a motion for an

---

1. *See* I.C. 35–42–5–1 (Burns Code Ed.Repl.1994).

2. Resisting law enforcement is a class D felony. *See* I.C. 35–44–3–3 (Burns Code Ed.Repl.1994).

3. *See* I.C. 35–50–2–8 (Burns Code Ed.Repl.1994).

early trial, which the trial court granted four days later, on January 25. On February 5, 1993, the State amended its information to add a charge of robbery as a class C felony. This additional count alleged the same act as alleged in the B felony account except that use of a deadly weapon was omitted. On April 6, 1993, the trial court set the trial date for May 10, 1993.

On May 7, the trial court vacated the May 10 date due to a congested calendar, resetting the trial for June 21, 1993. Subsequently, the trial court vacated and reset trial dates four more times, each time due to a congested calendar.[4] The fifth resetting resulted in a trial date scheduled for November 8, 1993. On November 8, however, the State declined prosecution and the trial court ordered all counts against Payne dismissed.[5] Later that same day, the State re-filed the charges against Payne under a new cause number.

Two days later, on November 10, Payne filed a second motion for an early trial. On November 17, the trial court set a trial date for December 27, 1993. On December 2, Payne filed a motion for discharge pursuant to Ind.Crim. Rule 4(B), which the trial court denied.[6] Trial was held on December 27, 1993, after which a jury found Payne guilty of robbery as a class B felony, and of resisting law enforcement. The jury then heard evidence regarding the habitual offender count, at the conclusion of which it found Payne to be an habitual offender.[7] We will supply additional facts where necessary or appropriate.

## I. EARLY TRIAL

Payne argues that he was denied his right to an early trial. The right to an early trial is expressed in Crim.R. 4(B)(1), which provides in relevant part as follows:

"If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.... [A] trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time."

Payne moved for an early trial on January 21, 1993. Seventy days from January 21 is April 1. Therefore, Payne contends that the trial court should have tried him by April 1 instead of continually resetting his trial due to "court congestion." The gravamen of Payne's argument maintains that the trial court's "technique" of "congesting" its calendar to avoid operation of Crim.R. 4 "goes far beyond the meaning and spirit of any congested calendar exception as does the use of a dismissal to secure a continuance." Appellant's Brief at 17. Accordingly, he concludes

---

**4.** The trial court vacated the June 21 setting on June 18, and reset trial for July 26. The trial court vacated the July 26 setting on July 22, and reset trial for August 30. The court vacated the August 30 setting on August 27, and reset trial for October 4. The court vacated the October 4 setting on October 1, and reset trial for November 8. The court reset trial each time upon its own motion; neither the State nor the defense sought to continue the trial date.

**5.** On November 3, a few days before the State re-filed charges against him, Payne filed a motion pursuant to Ind.Crim.Rule 4(A) seeking release upon his own recognizance pending trial. The trial court denied the request.

**6.** Payne's December 2 motion sought release under the provisions of Crim.R. 4(B). The motion noted that Payne asked for a speedy trial on January 21, 1993, that the case had been reset several times, that the State refiled charges against him, and that the seventy days had expired on April 1, 1993.

**7.** On January 21, 1994, the trial judge sentenced Payne to ten years imprisonment on the robbery conviction, enhanced by an additional twenty years based upon the habitual offender finding. The trial judge sentenced Payne to one and one-half years on the resisting law enforcement charge.

that he is entitled to discharge.[8]

A trial court may, upon its own motion, schedule a trial for a date beyond the seventy-day period provided in Crim.R. 4(B) when the congested nature of its calendar truly precludes a trial date within the early trial frame. *See Dudley v. State* (1985) Ind., 480 N.E.2d 881, 890; *Jordan v. State* (1982) Ind., 435 N.E.2d 257, 258–59; *Loyd v. State* (1980) 272 Ind. 404, 398 N.E.2d 1260, 1265, *cert. denied,* (1980) 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Likewise, a defendant may challenge the propriety of a continuation made under the auspices of a "congested calendar". Indeed, our Supreme Court has determined that the delay must be reasonable and that the reasonableness of such a delay must be judged in the context of the particular case. *Loyd, supra,* 398 N.E.2d at 1265; *Sholar v. State* (1993) 1st Dist. Ind. App., 626 N.E.2d 547, 549; *Biggs v. State* (1989) 1st Dist. Ind.App., 546 N.E.2d 1271, 1276. Upon appeal, parties have also focused upon the sufficiency of the record evidencing a congested calendar. *See, e.g., Gee v. State* (1988) Ind., 526 N.E.2d 1152, 1153; *Fortson v. State* (1979) 270 Ind. 289, 385 N.E.2d 429; *Gill v. State* (1977) 267 Ind. 160, 368 N.E.2d 1159.

Payne's argument here strikes at the very heart of the congested calendar exception, contending that we must determine whether the congested calendar exception "is so large as to be allowed to swallow the balance of [Crim.R. 4]." Appellant's Brief at 18. He maintains that the exception "was intended to be used only in 'exceptional' circumstances, not as a matter of routine or normal conduct of Court business." *Id.* at 27. Payne also maintains that a congested court is hardly an "open court" in the context of Indiana's constitution, *see Ind. Const.* Art. I, § 12, and that the trial judge here should have found another judge to handle the matter in order to avoid the delay.

Payne also attacks the fact that there is a lack of a factual basis in the record for us to determine whether a delay due to calendar congestion was indeed reasonable. Such an argument centers around the fact that the trial court's orders resetting trial here merely state that the rescheduling is due to a congested calendar without specifically mentioning priority or whether the resetting is a first, second, third, etc., choice setting. The record here reveals some discussion of other cases set for trial that apparently enjoyed priority. Nevertheless, Payne is correct in pointing out that the record does not disclose whether the competing cases went to trial, whether there were speedy trial motions in those cases, or whether those motions preceded his.

As a general proposition it would seem that a congested calendar excuse for not bringing a defendant to trial is only appropriate for inability to make an initial trial setting. As a reason for continuing a trial date already set, it is valid only if the trial being continued is a first choice setting and there are reasons why the trial cannot proceed on that date. *See Bridwell v. State* (1994) 5th Dist. Ind.App., 640 N.E.2d 437, 440, *trans. denied* (Sullivan, J., dissenting). In *Loyd, supra,* 398 N.E.2d at 1265, our Supreme Court noted that "the court calendar may be congested by a variety of circumstances, among them the unavailability of essential personnel or physical facilities." A related valid reason would be if a trial in progress extends into the time allotted for the instant case. *Raber v. State* (1993) 1st Dist. Ind.App., 626 N.E.2d 506. However, "court congestion" does not exist as a valid basis for resetting a trial date outside the time required for a speedy trial if the trial being continued is not a first choice setting and a higher choice setting is ready for trial.

In light of the fact that the record here does not adequately disclose the factual basis

8. Payne also notes that the trial court denied his November 3 oral motion for a release pending trial pursuant to Crim.R. 4(A). Upon appeal, Payne requests a discharge. We do not read his argument upon appeal as requesting a discharge because the trial court failed to release him upon his own recognizance pending trial per Crim.R. 4(A). Rather, Payne bases his right to a discharge upon the court's failure to bring him to trial within seventy days of his early trial request and the use of a congested calendar as a reason for such a delay. In any event, we point out that the State may detain a defendant in jail for longer than six months if the delay is attributable to the defendant or if legitimate court congestion forces the delay.

for inability to bring Payne to trial on the scheduled date five separate times we would ordinarily hold, pursuant to *Raber v. State* (1993) 1st Dist. Ind.App., 622 N.E.2d 541, *opinion following remand*, 626 N.E.2d 506, that the continuances granted did not provide valid reason to bring Payne to trial outside the seventy-day period for trial. *Contra Bridwell, supra*, 640 N.E.2d 437. However, our disposition of the speedy trial issue is not governed by the validity of the congested court calendar continuances.

The State argues that the date of trial should not be calculated from Payne's January 21 motion for an early trial because he filed a second early trial request on November 10, two days after the State dismissed and re-filed charges against him. Thus, the State concludes that Payne has abandoned his January 21 motion, and that the trial court merely had to try the cause within seventy days of Payne's November 10 early trial motion, which it did.[9] Further, the State argues that Payne has abandoned his early trial motion even if we acknowledge that the seventy-day period began on January 21 because he failed to object when the trial court initially set the trial for May 10, 109 days after he made his early trial request.

We agree that Payne is not entitled to a discharge. However, we disagree with both parties' assertions that the State had until April 1, 1993 to bring Payne to trial in order to comply with the seventy-day deadline. Both parties have failed to take into account the fact that Payne agreed to plead guilty in February, and, thus, abandoned his January motion for an early trial.

■ Our cases require that a Crim.R. 4 movant must maintain a position reasonably consistent with the request he has made.

*Stone v. State* (1988) Ind., 531 N.E.2d 191, 194; *Pasha v. State* (1988) Ind., 524 N.E.2d 310, 313; *Minneman v. State* (1982) Ind., 441 N.E.2d 673, 677, *reh'g denied, cert. denied*, (1983) 461 U.S. 933, 103 S.Ct. 2099, 77 L.Ed.2d 307; *Mickens v. State* (1982) Ind., 439 N.E.2d 591, 595;[10] *Rutledge v. State* (1981) Ind., 426 N.E.2d 638, 640. Failure to do so at any point constitutes an abandonment of the request and the motion ceases to have legal viability. *Stone, supra* at 194; *Rutledge, supra* at 640. In a case factually similar, we reasoned as follows:

"It is logically inconsistent for a defendant to request a speedy trial and then plead guilty because the former is waived by the latter. As our supreme court has noted, 'The right to have a trial expeditiously cannot exist or be enforced apart from the right to trial, and any claim of a denial thereof is waived upon a plea of guilty [citations omitted]'." *Barnett v. State* (1994) 2d Dist. Ind.App., 637 N.E.2d 826, 829.

In *Barnett*, we adhered to *Mickens, supra*, and held that a defendant's guilty plea constitutes an abandonment of any previously asserted Crim.R. 4 early trial requests, regardless of whether the trial court ultimately accepts the plea.[11]

Here, Payne moved for an early trial on January 21, 1993. On February 2 at a pre-trial conference, the State tendered a plea offer to Payne. On February 9, the record discloses that Payne agreed to accept the State's offer. The trial court then set a hearing regarding the plea and sentencing for March 9. The parties agreed to continue that hearing until April 6, 1993, at which time Payne withdrew his request to enter a guilty plea.

9. The State brought Payne to trial within seventy days of his second speedy trial motion; Payne's trial began on December 27, 1993, forty-seven days after his November 10 motion.

10. *Mickens* has a notable subsequent history. Our Supreme Court affirmed the denial of Mickens' first petition for post-conviction relief, (1985), 479 N.E.2d 520. Mickens appealed the denial of a second PCR petition, which the Court of Appeals affirmed, (1991), 579 N.E.2d 615. Our Supreme Court subsequently granted trans-

fer and vacated a portion of the Court of Appeals opinion which addressed procedural matters. *See Mickens v. State* (1992) Ind., 596 N.E.2d 1379. This subsequent history does not affect the proposition for which we cite *Mickens*.

11. In *Mickens, supra*, 439 N.E.2d at 595, our Supreme Court held that the rejection of a plea agreement *and* the filing of a second speedy trial motion on the same day were acts that, together, constituted an abandonment of an earlier speedy trial motion.

By accepting the State's offer, Payne waived his right to trial, which included his right to an early trial.[12] *Barnett, supra,* 637 N.E.2d at 830. His January early trial request was, therefore, extinguished. *Id.* Accordingly, on April 6, when he withdrew his guilty plea request, Payne's right to trial was reinstated. Payne would have had to make a new early trial request in order to invoke once more the benefit of Crim.R. 4(B). *Id.* He did not make another Crim.R. 4(B) request until November 10, 1993, two days after the State dismissed and refiled charges against him. Thus, from April 6 until November 10, Payne did not have an early trial request on record and may not complain of the delay in the context of Crim.R. 4(B). Pursuant to his Crim.R. 4(B) motion of November 10, the State had seventy days within which to try him. The State tried him on December 27, 1993, forty-seven days after his request and within the Crim.R. 4 parameters. Payne is not entitled to discharge.

We reject the State's assertion that the seventy-day time period pursuant to Crim.R. 4(B) "automatically" started anew upon Payne's second early trial request. Had Payne not abandoned his January early trial request and assuming that the court's "congested calendar" resettings tolled the seventy-day time period, the fact that he filed another such request in November would be of no moment if the State's re-filing of charges is an apparent attempt to circumvent Crim.R. 4(B). *See Hornaday v. State* (1994) 2d Dist.Ind.App., 639 N.E.2d 303, 306–07, *trans. denied; Phelps v. State* (1989) 2d Dist. Ind.App., 532 N.E.2d 619, 620–21; *Fink v. State* (1984) 4th Dist. Ind.App., 469 N.E.2d 466, 468–69.[13]

Payne contends, in the alternative, that if he is deemed to have "waived his right to be speedily tried because there was no motion for discharge and no objection at each setting outside the seventy days[,] the waiver must be found to have been the result of the representation he received and the conclu-

12. We wish to make it clear that, in our view, a defendant does not abandon an earlier Crim.R. 4(B) request during plea *negotiations*. Rather, the period of time in which the State and a defendant are engaged in plea negotiations merely tolls the Crim.R. 4(B) timetable and is, thus, attributable to the defendant. That time period does not count against the State for purposes of a Crim.R. 4 motion. *See Burdine v. State* (1987) Ind., 515 N.E.2d 1085, 1091, *reh'g denied; Wilson v. State* (1993) 2d Dist.Ind.App., 606 N.E.2d 1314, 1316–17.

In *Vaughan v. State* (1984) 4th Dist.Ind.App., 470 N.E.2d 374, 377, *trans. denied,* the Fourth District of this court noted that our Supreme Court in *Mickens, supra,* 439 N.E.2d 591, held that the "defendant abandoned his speedy trial motion for the period in which he pursued plea *negotiations.*" (emphasis supplied). *Accord State v. Smith* (1986) 2d Dist.Ind.App., 495 N.E.2d 539, 541, *reh'g denied.* We disagree with the earlier interpretation to the extent that it implies that a defendant abandons an earlier Crim.R. 4(B) motion merely by entering into plea negotiations or by considering a plea offer. If such were the case, the State shrewdly could propose a plea offer on the sixty-ninth or seventieth day of the Crim.R. 4(B) time period knowing full well that the plea offer contains unacceptable terms. If the defendant then chooses to consider the plea and the Crim.R. 4(B) timetable expires before the defendant rejects it, the State could effectively avoid the Crim.R. 4(B) time requirement because the defendant in such a situation would have abandoned his early trial request by considering the offer.

We note that our Supreme Court decided in *Mickens* that the defendant had abandoned an earlier Crim.R. 4(B) request by pursuing plea negotiations *and* by making a second speedy trial request. Thus, the pursuit of plea negotiations was not the sole reason for the holding in *Mickens.* Furthermore, with regard to the second speedy trial request, we are mindful that, at least when the State has dismissed and re-filed charges against a defendant in an apparent attempt to circumvent Crim.R. 4, that defendant does not abandon an earlier Crim.R. 4(B) request if he files a second such request in response to the re-filed charges. *Hornaday v. State* (1994) 2d Dist.Ind.App., 639 N.E.2d 303, 306–07, *trans. denied; Phelps v. State* (1989) 2d Dist. Ind.App., 532 N.E.2d 619, 620–21.

Here, as in *Barnett* and *Vaughan,* Payne went one step further than mere plea negotiations; he accepted a plea agreement. It was that act which is inconsistent with his earlier Crim.R. 4(B) request because it presumes that he no longer desired to have any trial at all, much less an early one.

13. In *Phelps, supra,* this district adopted earlier reasoning from *Fink, supra,* and held that, when the State has dismissed and re-filed charges against a defendant in an apparent attempt to circumvent Crim.R. 4(B), then his or her early trial motion relates back to the original charge even in cases in which the defendant filed a second early trial motion in response to the re-filed charges. *Accord Hornaday, supra* at 307.

sion is inescapable that Payne's trial counsel was ineffective[.]" Appellant's Brief at 30. Payne's argument upon this point is based upon an erroneous assumption that he never abandoned his January early trial motion and that the State should have tried him by April 1. Nevertheless, there is some merit to an ineffective assistance argument even in light of our above determinations. We will, therefore, examine trial counsel's failure to file a new Crim.R. 4(B) motion for a seven-month period after Payne withdrew his request to plead guilty.

■ The standard for judging the adequacy of counsel's performance is that of reasonably effective assistance. To prevail upon a claim of ineffective assistance of counsel, a defendant must first show that his or her counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bellmore v. State* (1992) Ind., 602 N.E.2d 111, 123, *reh'g denied.* Second, the defendant must show that the deficient performance so prejudiced him that he was denied a fair trial. *Strickland, supra,* 466 U.S. 668, 104 S.Ct. 2052; *Wickliffe v. State* (1988) Ind., 523 N.E.2d 1385; *Lawrence v. State* (1984) Ind., 464 N.E.2d 1291; *Young v. State* (1993) 2d Dist. Ind. App., 620 N.E.2d 21, 26, *trans. denied; Brown v. State* (1992) 2d Dist. Ind.App., 587 N.E.2d 693, 700. Prejudice exists when there is a reasonable probability that, but for counsel's defective performance, the result of the proceeding would have been different. *Young, supra* at 26; *see also McCollum v. State* (1991) Ind., 582 N.E.2d 804, 810, *reh'g denied; Stroud v. State* (1992) 5th Dist. Ind. App., 587 N.E.2d 1335, 1338, *trans. denied.*

■ We recognize a strong presumption that counsel's assistance fell within prevailing professional norms, and an appellant must present strong and convincing evidence to rebut that presumption. *Duncan v. State* (1987) Ind., 514 N.E.2d 1252, 1253. Accordingly, our scrutiny of counsel's performance is highly deferential; we will not exercise such scrutiny through distortions of hind-

sight. *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. Isolated poor strategy, inexperience, or questionable tactics do not necessarily amount to ineffective counsel. *E.g., Duncan, supra* at 1253; *Jones v. State* (1991) 2d Dist. Ind.App., 569 N.E.2d 975, 982.

■ Payne has failed to meet the above standard. First, it is clear that Payne's counsel mistakenly thought Payne's January early trial request was still in effect as of November 3, the date he filed for release pending trial per Crim.R. 4(A). He also labored under the impression that it was in effect when he filed the December 2 motion for discharge. Nevertheless, his misconception does not rise to the level of ineffective assistance. It is plausible that counsel was not aware that he had to file a second Crim.R. 4 motion to avoid abandonment. After all, we did not decide *Barnett, supra,* 637 N.E.2d 826, the primary case upon which we rely here, until July of 1994, over one year after Payne withdrew his request to plead guilty. Moreover, it is conceivable that the published decisions as of April of 1993 left the issue unclear as applied to these circumstances.[14]

Furthermore, Payne cannot show any prejudice. It is impossible to know whether or not the trial court would have been able to try him within the Crim.R. 4(B) time frame had his counsel made a new speedy trial request immediately after he abandoned his guilty plea. Payne was not denied effective assistance of counsel.

## II. HABITUAL OFFENDER

Payne contends that the trial court erred during the habitual offender phase of his trial by admitting into evidence documents relating to prior felony cases. Payne also argues that the evidence is insufficient to sustain a finding that he is an habitual offender even if the trial court properly admitted such documents. In addition, Payne maintains that the trial court erred in allowing him to be found an habitual offender without first conducting an initial hearing on the charge and

---

**14.** We point out that Payne's trial counsel does not appear to be alone in his understanding of the issue. Neither the prosecutor, nor either appellate counsel seemed to believe that the guilty plea had any Crim.R. 4 significance because none of them ever raised the issue.

in light of the fact that the State's allegation against him is unsigned. We disagree with each of these contentions.

### A. Admission of Exhibits

Robert Worland (Worland) testified that he was the supervisor of the fingerprint unit and one of the persons responsible for keeping criminal arrest records for the Indianapolis Police Department (IPD). He described his training in fingerprint examination and explained the process of fingerprint comparison. Worland next explained that he had taken a print of Payne's right thumb on the day of the trial, and had compared it against the fingerprint impression found on two particular IPD arrest records.

The State then showed Worland State's Exhibit 4 and State's Exhibit 5, each of which was a certified copy of an IPD arrest record. John Payne's name appeared on each exhibit, along with a right thumbprint, the date of arrest, certain charging information, and a cause number.[15] Worland testified that he personally obtained exhibits 4 and 5 from IPD's central records. The trial court admitted Worland's fingerprint of Payne as State's Exhibit 3 without objection. It also admitted exhibits 4 and 5 over Payne's objection that the foundation was improper.

The State next offered exhibits 6 and 7, each of which consisted of certified court documents bearing cause numbers corresponding to the above arrest records. The court documents reveal that Payne pleaded guilty to robbery on July 19, 1977, for which the trial court sentenced him to ten years imprisonment, and that he also pleaded guilty to theft on April 25, 1984, for which the court sentenced him to four years with one year suspended.[16] Again, over Payne's insufficient foundation objection, the trial court admitted exhibits 6 and 7. Worland then testified that he had compared the thumbprint he took of Payne on the day of the trial to the prints on both arrest records, and expressed the opinion that Payne made them all.

Payne argues that the trial court's admission of the arrest and court records violated his right to confront his accusers guaranteed in the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Indiana Constitution. He maintains that the documents were hearsay and that the State failed to lay an adequate evidentiary foundation for their admission into evidence. He also challenges the State's ability to use the records against him because the State is an interested governmental agency and, as such,

15.   Exhibit 4 reveals that John William Payne was arrested on March 30, 1977, and charged with an armed robbery that occurred at 2800 Lafayette Road in Indianapolis. It lists Payne as a black male with a 4/16/49 date of birth. It refers to the following cause number: 1077-2093. Additional handwriting on the record reveals that Payne received a ten-year sentence on July 19, 1977. Exhibit 5 discloses that Lionel Allen May, a/k/a John Payne, was arrested on March 5, 1984, and charged with a theft that occurred at 2333 Lafayette Road. It lists Payne as a black male with a 4/16/49 date of birth, and references the following cause number: A684-158. Additional handwriting on the record reveals that Payne received a four-year prison sentence with one year suspended.

16.   State's Exhibit 6, collectively, consists of various court documents from the Criminal Court of Marion County regarding *State of Indiana v. John William Payne*, CR 77-184C. Each sheet has a court certification stamp and signature. The first document is the information charging Payne with robbery, dated April 1, 1977. The second document is a probable cause affidavit filed on April 1, 1977, and bearing cause number

CR 77-184C. Next, are documents dated July 19, 1977 indicating that Payne was committed to the custody of the Department of Correction for ten years. The last document is the trial court's minute entry sheet for cause number CR 77-184C. It notes that Payne entered a plea of guilty on July 19, 1977.

State's Exhibit 7, collectively, consists of documents from Marion Municipal Court, Criminal Division regarding *State of Indiana v. Lionel A. May a/k/a John Payne*, A84-87 (A684-158). Each sheet has a court certification stamp and signature. The first document is an information charging Payne with theft, dated March 5, 1984. Next, is an abstract of judgment for *State of Indiana v. Lionel A. May a/k/a John Payne*, cause number A84-87, which reflects a sentence of four years imprisonment with one year suspended. Exhibit 7 also contains a notice of commitment and a corrected notice, indicating a sentence of four years with one suspended sentence (credit for 19 days served). Finally, the trial court's minute entry dated April 25, 1984 reflects a plea of guilty to theft as a class D felony. The plea agreement reflects that Payne signed his own initials, "JP" (as opposed to "LM") next to each of the plea agreement provisions.

the "guarantees of trustworthiness found with Court or official documents can hardly be said to be present." Appellant's Brief at 35.

With regard to exhibits 6 and 7, I.C. 34–1–17–7 [17] and Ind. Trial Rule 44 govern authenticity of official public court records.[18] I.C. 34–1–17–7 provides for admission of copies of public records when they are attested as true and complete by the keeper of the records under the seal of his office, or if the officer has no seal, his attestation must be accompanied by a certificate that such attestation is made by the proper officer from the clerk under the seal of the circuit or superior court. *See Wilson v. State* (1987) Ind., 513 N.E.2d 653, 656. Trial Rule 44(A)(1) provides that proof of an official record may be evidenced by an official publication or a copy attested by the officer having legal custody of the record or his deputy. No proof that the officer has custody of the record is necessary, although it is permitted. *See Id.*

▮ Here, Worland reviewed both exhibits 6 and 7 and testified that each page of both exhibits contained an official certification stamp and a signature from the Clerk of the Marion County Courts. Indeed, each page of both exhibits reveals an official stamp and signature from the Clerk of the Marion County Courts indicating that it is a true and complete official certified copy of a court record. Accordingly, exhibits 6 and 7 are self-authenticating and the trial court properly admitted them as official records under T.R. 44(A)(1). *Miller v. State* (1990) Ind., 563 N.E.2d 578, 583, *reh'g denied; Wilson, supra,* 513 N.E.2d at 656; *Coleman v. State* (1986) Ind., 490 N.E.2d 711, 714; *Griffin v. State* (1981) 275 Ind. 107, 415 N.E.2d 60, 65.

Next, we discern no foundational inadequacies with regard to the admission of exhibits 4 and 5, the records of Payne's prior arrests. At trial, Payne objected to the admission of the arrest records, stating only that he "would object as to improper foundation." Record at 341–42. Although such a general objection arguably fails to satisfy the specificity requirement necessary to preserve appellate review, Payne's brief makes it clear that the perceived inadequacy concerns the foundation necessary to establish a business records exception to the hearsay rule. Payne specifically contends that Worland could not substantiate whether the person or persons who made the records had firsthand knowledge of the facts they evidence, and that the State failed to show that the person who had direct knowledge of the facts was unavailable or unable to recall those facts. In addition, Payne maintains that Worland is not the kind of person who can provide an adequate foundation because he is "one of a number of fingerprint technicians of the police department who have been given the additional title of 'keeper of the records' in order to simplify the proof of cases such as this." Appellant's Brief at 37.

Because exhibits 4 and 5 do not bear a clerk's certification in addition to the attestation of Officer Worland, I.C. 34–1–17–7 dealing with admissibility of official records is not the focus of our consideration. We, therefore, consider Payne's argument as tendered, i.e., that exhibits 4 and 5 were not properly qualified as a business record exception to hearsay.[19]

▮ Generally, the sufficiency of an evidentiary foundation is a matter left to the trial court's sound discretion; we will reverse only upon a showing of an abuse of that discretion. *See, e.g., Cobb v. State* (1992) 3d Dist. Ind.App., 585 N.E.2d 40, 43. The proper foundation for business records exception is well-established:

Rule 803(8) addresses the public records and reports exception to the hearsay rule.

---

17. *See* I.C. 34–1–17–7 (Burns Code Ed.Repl. 1986).

18. This case was tried on December 27, 1993, four days before the Indiana Rules of Evidence went into effect. Accordingly, we look to prior case law in determining the admissibility of these exhibits. Ind. Evidence Rule 803(6) embodies the current rule concerning the business records exception to the hearsay rule. Ind. Evidence

19. It is noted that the present "Public Records and Reports" exception of Ind. Evidence Rule 803(8) does not include investigative reports by police except when offered by an accused. We need not decide whether an officer's arrest report is an "investigative" report.

"[T]he sponsor of an exhibit offered under this exception need not have personally made it, filed it, or had firsthand knowledge of the transaction represented by it. Such a person need only show that the exhibit was part of certain records kept in the routine course of business and placed in the records by one who was authorized to do so and who had personal knowledge of the transaction represented at the time of the entry." *Belcher v. State* (1983) Ind., 453 N.E.2d 214, 219; *see also Knuckles v. State* (1990) 2d Dist. Ind.App., 549 N.E.2d 85, 87.

■ We have held that a sponsoring witness is not required to testify that he knew that the person who entered the information on the documents had personal knowledge of the events recorded. Rather, records kept in the usual course of business are presumed to have been placed there by those who have a duty to so record and have personal knowledge of the transaction represented by the entry, unless there is a showing to the contrary. *Lyons v. State* (1987) Ind., 506 N.E.2d 813; *Knuckles, supra,* 549 N.E.2d at 87. Payne has failed to show that the officers whose names appear on the arrest records did not have firsthand knowledge of the information listed there.

■ With regard to Payne's unavailability argument, we note that a few years ago Indiana courts began retreating from a requirement that a witness must be unavailable or unable to recall pertinent information before the business records exception became applicable. *See Cobb, supra,* 585 N.E.2d at 44 n. 2. We agree with the decision reached in *Cobb* upon this issue, and determine that the unavailability element should not be considered a significant element of the business records exception, especially in the absence of evidence suggesting that the record is not authentic. *Id.; see also Perry v. State* (1989) Ind., 541 N.E.2d 913, 918 (unavailability not listed as a foundational requirement); *Knuckles, supra,* 549 N.E.2d at 87 (unavailability not listed as a foundational requirement).

■ Next, our decisions make it clear that a person who has a familiarity with the records may provide a proper business records exception foundation even if he or she is not the entrant or his or her official supervisor. *Cobb, supra,* 585 N.E.2d at 43. We have held that to obtain admission under the business records exception, the proponent of an exhibit need only call an individual who has a functional understanding of the business' record-keeping process. *E.g., Burp v. State* (1993) 1st Dist. Ind.App., 612 N.E.2d 169, 172, *trans. denied.* We find the following reasoning particularly appropriate:

" 'While the most commonly encountered witness today may be a person in authority of the record-keeping department of the business, he or she is not the only witness who can provide the necessary foundation for admission of a business record. This foundation can be established by *anyone* who possesses, with respect to the particular document in question the knowledge of the . . . [required foundational elements]. This could be the entrant, the entrant's supervisor, co-workers, a records custodian or any other such person. What we demand is not a witness with a formalistic title but one with a functional understanding of the record-keeping process of the business with respect to the specific entry, transaction or declaration contained in the document.' " *Cobb, supra,* 585 N.E.2d at 43 (quoting *Baker v. Wagers* (1984) 2d Dist. Ind.App., 472 N.E.2d 218, 221, *trans. denied* (alterations in original)) (also citing, *inter alia, Cardin v. State* (1989) 1st Dist. Ind.App., 540 N.E.2d 51, 55, *trans. denied; Hatton v. State* (1986) 4th Dist. Ind.App., 498 N.E.2d 398, 401).

■ Here, Worland testified that he was a keeper of the records for IPD. The arrest records clearly were part of the records under his custody. He testified that IPD kept the records in the normal course of business and that persons with the business responsibility to do so kept and recorded arrest information at or near the time the transactions reflected upon the record occurred. This is the identical foundation held sufficient in *Lyons* and in *Knuckles.* Thus, there is no foundational deficiency here. The trial court properly admitted the two arrest records into

evidence.[20]  Furthermore, the State properly linked the arrest records to the court documents, and then properly linked both to Payne.[21]  The trial court did not err in admitting State's exhibits 4, 5, 6, and 7.

## B.  Sufficiency of the Evidence

■ Payne contends that the State failed to prove the existence of the underlying robbery conviction during the second phase of his trial.  Thus, he maintains that this failure rendered the evidence insufficient to sustain his habitual offender conviction.  Indiana's habitual offender statute, I.C. 35–50–2–8(d), states that "[a] person is a habitual offender if the jury … finds that the state has proved beyond a reasonable doubt that the person has accumulated two (2) prior unrelated felony convictions."  *See also Smith v. State* (1989) Ind., 543 N.E.2d 634, 636.  The statute does not require the State to re-prove the underlying felony or felonies of which the jury has just convicted the defendant during the habitual offender phase of the proceedings.  Indeed, our Supreme Court reasoned as followed in *Smith, supra:*

"Clearly the State must introduce evidence during the habitual proceeding to prove the two priors.  On the other hand, the

jury hearing the habitual evidence already knows the defendant committed the crime of which it has just found him guilty.  The statute does not require the State to re-prove that fact a second time to the same jurors."  543 N.E.2d at 636.

In this case, it is clear that the same jurors were involved in both phases of Payne's trial.  The State proved that Payne accumulated two unrelated felonies, robbery and theft, both of which occurred on separate occasions, years before he committed the instant offenses.  Hence, and in light of our above conclusion that the trial court properly admitted Payne's arrest and court records, we agree that there is ample evidence to sustain the jury's determination that Payne is an habitual offender.

## C.  Lack of Initial Hearing and Form of Allegation

Payne contends that the trial court erred in failing to conduct an initial hearing with regard to the habitual offender charge.  On November 10, 1993, the court held an initial hearing regarding the re-filed charges.  Payne's defense counsel stated that he was not the public defender who was present in court during that initial hearing.  According-

---

**20.**  It is true that police reports, or significant portions thereof, may not be admissible against a defendant in a criminal trial.  *State v. Edgman* (1983) 4th Dist. Ind.App., 447 N.E.2d 1091, 1103–04, *trans. denied; see also Donaldson v. Indianapolis Pub.Trans.Corp.* (1994) 4th Dist.Ind. App., 632 N.E.2d 1167, 1172.  However, courts have generally so held in the context of the business records exception because statements taken by a reporting officer are not given in the usual course of the *eyewitness'* business and, thus, do not fall within the exception.  *See Davidson v. State* (1990) Ind., 558 N.E.2d 1077, 1089; *Wells v. State* (1970) 254 Ind. 608, 261 N.E.2d 865; *Edgman, supra* at 1104.  In such cases, our paramount hearsay concern is allowing a trier of fact to consider statements made or conclusions drawn in the report itself.  Often, such reports contain the preparer's assumptions, interpretations, or conclusions with regard to certain events.  *E.g., Hogan v. State* (1993) 3d Dist.Ind. App., 616 N.E.2d 393, 395, *trans. denied; Doss v. State* (1989) 2d Dist.Ind.App., 536 N.E.2d 516, 518.  Regardless, the records involved in the instant case are arrest records, not police reports.  They, unlike police accident reports, do not suffer from the infirmity of not being taken while in the witness' course of business.  They were made by officers in the normal course of

their business and do not appear to contain any subjective assumptions, statements, interpretations, or conclusions made by an officer or a witness.  The arrest records merely reference pertinent information including the name of the arrestee, the date, the location of the alleged crime, the charge, and the disposition of a subsequent prosecution.  *See* n. 19, *supra.*

**21.**  Documents comprising Exhibit 4, the record of an arrest on March 30, 1977 for robbery, and documents comprising Exhibit 6, court documents reflecting a prosecution and sentence for robbery, both refer to James Payne and both bear the cause number CR1077–2093.  Documents comprising Exhibit 5, the record of an arrest on March 5, 1984 for theft, and documents comprising Exhibit 7, court documents reflecting a prosecution and sentence for theft, likewise refer to John Payne and both bear the same cause numbers.  In addition, Worland testified that the thumbprints from exhibits 4 and 5 matched the print of Payne's thumb that he took the day of the trial.  This is the same manner of identification properly utilized in *Jones v. State* (1988) Ind., 524 N.E.2d 1284, 1286–87, in *Lyons, supra,* 506 N.E.2d at 817, and in *Coleman, supra,* 490 N.E.2d at 714.

ly, Payne's counsel moved to dismiss the habitual offender count before trial commenced, contending that he never received a copy of the charging information and other "paperwork" relating to the two prior felonies alleged. Record at 122.24. He repeated his objection at the conclusion of the trial. At that point, the trial judge noted the fact that the record minute entry indicated that Payne wished to have the charges read at the initial hearing and that the court indeed read them. The trial judge then noted that he did not know if the habitual offender charge was read or not,[22] but indicated that such a charge was filed at the same time as the other charges. Hence, he assumed that the court read all of the charges and, therefore, denied Payne's motion for a dismissal of the habitual offender count.

 Payne has failed to demonstrate reversible error. The record discloses that the trial court granted Payne's counsel an opportunity to review the habitual offender documentation during the trial on the underlying robbery and resisting law enforcement charges, well before the habitual offender phase began. Furthermore, despite the fact that Payne's counsel again objected to the habitual offender charge at the conclusion of the trial, he never requested a continuance. As the State correctly notes, Payne has failed to establish how he would have benefited from earlier notice of this charge, if in fact he did not have such notice. He has not alleged that any new evidence could have been found or that any new defense strategy would have

been employed had he received earlier notice of the State's charge.

 Finally, the record reveals that the habitual offender charge against Payne was properly signed and attested despite any inconsistency that may appear in the record.[23] It, therefore, meets the requirements of I.C. 35–34–1–2.

The judgment of the trial court is affirmed.

FRIEDLANDER and NAJAM, JJ., concur.

---

22. The trial judge did not know whether the court read the habitual offender charge aloud at the initial hearing because he did not preside at the hearing. The record reveals that a master commissioner presided.

23. The State re-filed charges against Payne on November 8, 1993. The first part of the information charged him with three counts, robbery as a class A felony, robbery as a class B felony, and resisting law enforcement. The record reveals that a second document, also dated November 8, 1993 charges Payne as an habitual offender. This second document is not located with the first charging document in the record, however. Rather, it appears as part of the court's preliminary instructions regarding the habitual offender portion of the trial. Those instructions reveal that the information dated November 8 properly comprises the habitual offender count.

The amended information filed on December 27, 1993 contains Counts I and II. It is signed by an affiant, by a deputy prosecuting attorney and hand-dated "12/27/93." Record at 27. Immediately following that information is what appears to be the first page of the habitual offender information filed on November 8. It does, however, contain some handwriting in the margin that does not appear on the November 8 charge. Further, it is not file-stamped and consists of only one page. Nowhere on the record copy of that information does an affiant's or a prosecutor's signature appear. The second page apparently either was not placed with the information by the prosecutor when amended on December 27 or was inadvertently left out of the record. Regardless, the record clearly reflects that the November 8, 1993 information included an affiant's and a prosecutor's signature.