**Michael GETHA, Defendant–Appellant,**

v.

**STATE of Indiana, Plaintiff–Appellee.**

**No. 45A04–8707–CR–224.**

Court of Appeals of Indiana,
Third District.

June 13, 1988.

Daniel L. Bella, Appellate Public Defender, Crown Point, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Presiding Judge.

Appellant, Michael Getha, appeals his conviction for the crime of Fraud on a Financial Institution, a Class C felony. Getha was sentenced to prison for a term of eight years with the excess over six years suspended. We affirm.

The facts reveal that Getha opened a checking account with the First National Bank of Valparaiso in February 1986. He deposited checks in the amounts of $5,000.00, $3,500.00 and $6,900.00 into this account. The checks, however, were dishonored and on April 18 First National gave Getha notice his account was closed. The notice was repeated in early May.

Getha proceeded to open two new checking accounts with the Bank of Indiana at Merrillville, each with deposits of $300, in early May. On May 12 Getha deposited five checks drawn from the closed account at First National totalling over $28,000.00 into these accounts. He also deposited three other checks totalling $21,000.00 into the accounts. On May 13 Bank of Indiana paid out two checks drawn from the accounts amounting to $7,000.00. All eight of the checks Getha deposited were dishonored resulting in an overdraft of $6,751.00 in Getha's personal account.

Getha then gave Bank of Indiana a check for the total amount he owed drawn on a First Bank of Whiting account. This check also was dishonored.

On May 20 police confronted Getha. He admitted his knowledge that the First National account was closed at the time he deposited five checks drawn on the First National account with Bank of Indiana. He also confessed knowing that the initial checks he deposited in the First National account had been dishonored. Finally Getha admitted writing the checks from the First National account and one other check for deposit into the Bank of Indiana ac-

count. This conviction, pursuant to a jury trial, followed.

Appellant raises three issues for our consideration on appeal. First, were various exhibits erroneously admitted into evidence because improperly authenticated under the business records exception to the hearsay rule? Second, was the authentication of two exhibits purporting to show that appellant executed the checks drawn on the Bank of Indiana account inadequate? Third, was the evidence sufficient to sustain the jury's verdict?

Appellant first argues that certain evidence was admitted against him improperly under the business records exception to the hearsay rule. The evidence in question consists of eight checks in amounts totalling $49,447.61 which Getha deposited into his Bank of Indiana checking account on May 12. The checks were marked variously with "NSF," "Return Unpaid; Uncoll. Fds.," or "Account Closed." Appellant infers that these entries were made on the checks by employees of the banks upon which the checks were drawn, namely the Harris Bank, the Shawmut Bank, and First National Bank of Valparaiso. Getha contends that the witnesses from the Bank of Indiana through whom the exhibits were introduced had no knowledge of the status of the accounts at other banks, could not testify as to how the markings were placed on the checks, and that therefore the state was not able to lay a proper foundation for the business records exception to the hearsay rule.

The business records exception to the hearsay rule permits the admission of documentary evidence if it is identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having a duty to so record and personal knowledge of the transaction represented by the entry. The sponsor of the exhibit need not have made the entry, filed it or have had first hand knowledge of the transaction represented at the time of the entry. He need only show that it is part of the records kept in the routine course of business and placed in the record by one authorized to do so, who had personal knowledge of the transaction represented at the time of entry. *Campbell v. State* (1986), Ind., 500 N.E.2d 174, 181; *Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, 221.

Further, IC 26–1–3–510 applies.[1]

26–1–3–510   Evidence of dishonor and notice of dishonor

Sec. 510. The following are admissible as evidence and create a presumption of dishonor and of any notice of dishonor therein shown:

(a) A document regular in form as provided in IC 26–1–3–509 which purports to be a protest.

(b) The purported stamp or writing of the drawee, payor bank, or presenting bank on the instrument or accompanying it stating that acceptance or payment has been refused for reasons consistent with dishonor.

We noted that under the analogous rule which holds true in some federal courts when a business makes records prepared by another part of its record system, there are sufficient indicia of trustworthiness to justify admission. However, we held that in Indiana the witness through which a business record is to be admitted must have personal knowledge of the various elements of the foundation.

In *Wilson* the attesting witness gave no evidence as to how the invoices were prepared, did not testify that Jenga Corporation had paid those amounts and, most significantly, did not testify that the amounts represented the reasonable value of services and materials used on the project. Therefore, the necessary foundation was not laid.

---

1. In the absence of the statute the reasoning of *Wilson v. Jenga Corp.* (1986), Ind.App., 490 N.E. 2d 375, 377 would seem to apply. In *Wilson* the Jenga Corporation attempted to prove the quantity and value of materials it provided solely by introducing invoices it had received from its creditors. In ruling on the hearsay objection we noted:

   Problems may arise when one business organization seeks to introduce records in its possession but actually prepared by another. It seems evidence that mere possession or 'custody' of records under these circumstances does not qualify employees of the possessing party to lay the requisite foundation....

   citing McCormick, *Evidence,* § 312 (Cleary Ed. 1984).

(c) Any book or record of the drawee, payor bank, or any collecting bank kept in the usual course of business which shows dishonor, even though there is no evidence of who made the entry.

Subsection (c) is pertinent to the problem at hand. IC 26–1–3–510(c) provides for the admissibility of records kept by any collecting bank (in this case the Bank of Indiana) in the usual course of business which show dishonor despite the fact that there exists no evidence as to who made the entry. As noted in the Uniform Commercial Code Comment on this subsection, the provision rests upon the inherent improbability that bank records will show any dishonor which has not in fact occurred and the improbability that the holder will attempt to proceed on the basis of dishonor if he could in fact have obtained payment.

■ This subsection and the commentary accompanying it recognize the relative uniformity of banking practices such that indicia of trustworthiness sufficient to admit bank records concerning dishonor exist even where it is unknown who made the entry concerning dishonor.[2] We hold that where, as here, a collecting bank can properly lay a foundation for the business records exception to the hearsay rule except for those portions of the record indicating dishonor. IC 26–1–3–510(c) provides that the foundation is nevertheless adequate for admission of the record into evidence.

Appellant has not challenged any portion of the foundation laid here except with regard to the notations indicating dishonor. We find no error on this issue.

■ Appellant's second argument is that the trial court improperly admitted into evidence the two checks which appellant wrote on his Bank of Indiana account for $2,000.00 and $5,000.00 respectively. Appellant argues that because there was no evidence from anyone who witnessed Getha either write or present the checks and there was no testimony of anyone familiar with Getha's handwriting that the signature was his, the exhibits were not properly authenticated. Generally proof of authentication is required before documents may be admitted. The admissibility of documents is within the discretion of the trial court and will be reversed only on a clear showing of error. An exhibit, to be admissible into evidence, must be relevant, material, authentic, and must bear some relevance to the defendant and the transaction from which the criminal charge arises. *Brooks v. State* (1986), Ind., 497 N.E.2d 210, 215; *Golden v. State* (1985), Ind., 485 N.E.2d 51, 54–55; *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, 1062.

■ In this case the two checks were not properly authenticated as being what they purport to be: checks signed by Getha. There was no evidence either direct or circumstantial presented at the time the checks were introduced that Getha had signed the checks. The state failed to properly authenticate the checks prior to admission and it was error to admit these checks.

We hold, however, that this error was harmless. Bank of Indiana officer Kenneth Dykstra testified that he contacted Getha concerning making restitution for the overdraft which resulted from the alleged payment of the two improperly authenticated checks. Getha agreed to make restitution thereby implying that he had in fact drawn the checks. Getha personally presented a check drawn from a First Bank of Whiting account covering the overdraft to Dykstra. This check was also returned marked "NSF." The evidence then supports the proposition that Getha withdrew money from his Bank of Indiana account, despite the fact that the two checks also proving this fact were improperly authenticated. There is no reversible error on this issue.

■ Appellant's final challenge is to the sufficiency of the evidence supporting the conviction. Appellant was convicted of IC 35–43–5–8, Fraud on a Financial Institution.

2. Although this statute appears to concern civil matters we find that it applies in criminal matters where evidence of dishonor is relevant, as here.

35-43-5-8 Fraud on financial institutions

Sec. 8.  (a) A person who knowingly executes, or attempts to execute, a scheme or artifice:

(1) to defraud a state or federally chartered or federally insured financial institution; or

(2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;

commits a Class C felony.

Appellant argues that because the two checks were improperly authenticated there was no evidence that appellant ever obtained any money from the Bank of Indiana account.  However, as we have already pointed out, appellant's actions following the alleged presentment of the two checks sufficiently implied that he in fact did present those checks.  Further the evidence reflects a complex scheme of opening up checking accounts with several banks in succession.  The implied intent of the scheme was to fraudulently take advantage of the lag time involved in closing accounts and dishonoring checks in order to obtain, as he did, money owned by or under the custody or control of a state or federally chartered or federally insured financial institution.  The evidence is sufficient to support the conviction.

Affirmed.

HOFFMAN and NEAL, JJ., concur.