**Ahmed ASGHAR a/k/a Rashid Khan, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–9710–CR–449.

Court of Appeals of Indiana.

Sept. 3, 1998.

Rehearing Denied Oct. 26, 1998.

Jan B. Berg, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi E. Froug, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Ahmed Asghar, a/k/a Rashid Khan ("the defendant") appeals following his conviction for Fraud on a Financial Institution, a Class C felony [1].

We affirm.

### ISSUES

Two issues are raised for our review, which we restate as:

1. Whether the State presented sufficient evidence to support the defendant's conviction.

2. Whether the trial court erred when it permitted the State to introduce evidence of the defendant's prior bad acts under Indiana Evidence Rule 404(b).

### FACTS AND PROCEDURAL HISTORY

On November 25, 1996, the defendant, his ten-year old son and Cheema Hossaini went to the First of America Bank located in the Meijer store on East Washington Street in Cumberland. The defendant told a sales associate with the bank, Pamela Kendrick, that Hossaini wished to open a business checking account. Kendrick told the gentlemen to have a seat and that she would need a couple of pieces of identification in order to open an account. The defendant spoke with Hossaini in their native language, and then handed Kendrick Hossaini's Indiana State Identification Card. Kendrick then ran a standard inquiry through her computer system using the following information: Hossaini's full name, his address, his social security num-

---

1. Ind.Code 35–43–5–8(a).

ber, his date of birth and his Indiana Identification Card number. When a financial institution runs a "ChexSystems" inquiry on a potential customer, they receive pertinent information regarding the customer's past history. For example, Kendrick learned when Hossaini's social security number had been issued and whether he had other bank accounts across the country. After completing the inquiry, Kendrick asked Hossaini directly for additional identification. Hossaini produced a document entitled "World Service Authority Passport."

Becoming suspicious because Hossaini's Indiana Identification was issued only three days prior, Kendrick took the documents to her branch manager, Lon Turner. While Turner examined the documents in his private office, Kendrick engaged in conversation with Hossaini regarding the type of business he was planning. Turner then came out of his office, and he asked the gentlemen for a telephone number where he could verify residence. The defendant told Turner that they were staying at a friend's home and that the friend did not want to be disturbed. The defendant became increasingly insistent that Turner not call the phone number, and he eventually told Turner that the number was actually a hotel where he and Hossaini had been staying. When Turner asked the defendant for the name of the hotel, the defendant said he did not know. Turner became very suspicious at this point and brought the defendant into his office. Eventually, the defendant found the name of the hotel in the phone book.

Turner was concerned by the growing number of red flags regarding the defendant's legitimacy. Turner then saw a "Mailbox Etc." card in the defendant's wallet, and he knew that private mail services were sometimes used for fraudulent purposes. Finally, the defendant told Turner to forget about opening the account, that he would take his identification card back and simply leave the bank. At this point, Turner told him that he wasn't sure if he could return the card, and that he had to check with a friend.

Turner immediately called Clayton Clark of the Cumberland Police Department.

The defendant overheard Turner's conversation, and left the store. Turner found the defendant in the Meijer parking lot as Detective Clark arrived. Detective Clark asked the defendant for some identification, but the defendant said he did not have any. The three men then returned to the bank and Turner placed a call to the United States Secret Service. In the interim, the defendant's son was reunited with the group, and the two of them spoke in their native language. The defendant eventually produced a social security card and his son produced an Indiana Identification Card. Both of these pieces of identification were in the name of Ahmed Asghar. The defendant's Indiana Identification Card's date of issue was November 22, 1996.

Sometime later, the defendant's son was seen putting other identification cards in the trash at the Meijer Pizza Pan Restaurant. Meijer's Loss Prevention Officer retrieved the cards placed in the trash and found a Sam's Club card and a World Citizen Card, both with the name Ahmed Asghar; and an Indiana Identification Card issued on November 22, 1996, under the name of Mohamed Khalid. At this point, the defendant, Turner, Detective Clark and a Meijer Loss Prevention Officer went to the Loss Prevention Office and searched the defendant's coat. Detective Clark found a passport issued by the "World Passport Authority" in the name of Ahmed Asghar and a handwritten note on motel stationary. Written on the note was the name Ahmed Asghar, a social security number and a date of birth.[2] When Secret Service Agent Scott Eales arrived, Detective Clark turned all of the defendant's various identification pieces over to Agent Eales.

Agent Eales then took over the investigation. The defendant continued to insist that his name was Ahmed Asghar. Eales, in his 20 years as a Special Agent, did not recognize the defendant's passport as a valid document. Upon the defendant's insistence, Eales called the State Department in Wash-

---

**2.** The social security number and date of birth were the same that appeared on The defendant's

pieces of identification.

ington, D.C. and the local Immigration and Naturalization Service. Neither agency could identify the passport. Agent Eales also examined the defendant's social security card and determined that it was a counterfeit. Also discovered on the defendant's person were bank deposit slips from Fifth Third Bank dated November 25, 1996. These deposit slips were for different accounts; one in the name of Mohammed Khalid and the other had no name. Due to his suspicious behavior, the defendant was ultimately placed under arrest.

At trial, the State presented evidence, over the defendant's objection, of the defendant's involvement in attempts to open checking accounts at other banks. Specifically, Kyle Clark of Fifth Third Bank testified that on November 22, 1996, The defendant and a man named Mohammed Khalid sought to open a business and personal checking account. Khalid presented a recently issued Indiana Identification Card and a World Service Authority Passport. Two accounts were opened in Khalid's name and his business's name, and each account was funded with $200.

Also on November 22, 1996, the defendant and Cheema Hossaini went to National City Bank and sought to open business and personal accounts. Ultimately, the bank did not accommodate the defendant's requests because the defendant had no tax identification number for his business, and Hossaini's address could not be verified. Again, when asked about residence, the defendant reported a hotel address. When the representative of the bank called the hotel to verify residency, the hotel had no such guest.

On November 25, 1996, the defendant, his son, Cheema Hossaini and Mohammed Javed went to Bank One where Javed opened a personal account funded with $9700. Hossaini also established an account at Bank One and funded it with $200. Later that same day, the defendant, his son and Javed went to an NBD branch where the defendant asked to open a business account for Javed. Javed funded this account with $9700. In most of the above instances, a rush order was placed on the checks and recently issued

identification cards and "World" passports were used as identification.

Agent Eales's investigation further revealed that in October and November of 1996 the defendant had set up several voice mailbox accounts with Automated Business Systems under the name of Mohamod Iloyasi. The defendant and his associates provided these telephone numbers to the six banks they visited in November of 1996. Agent Eales further discovered that the defendant and several of his associates set up post office boxes with Mailboxes, Etc. Agent Eales also found that every address provided to the banks by the defendant or his associates was the address of a hotel or motel. Agent Eales followed up with each of these hotels and found that neither the defendant nor any of his associates had ever been hotel guests.

In December of 1996, the defendant told Agent Eales that he had been involved in this business with his associates for the past several years and had acquired three or four hundred thousand dollars. The defendant further told Agent Eales that the ringleader's name was Mohammad Boot.

## DISCUSSION AND DECISION
### I. *Sufficiency of the Evidence*
### *Fraud on a Financial Institution*

The defendant contends that the evidence is insufficient to support his conviction of Fraud on a Financial Institution. Specifically, he argues that the State failed to prove that he took a substantial step toward defrauding the bank or that he entertained the intent to defraud the bank.

> Ind.Code 35–43–5–8(a) provides as follows:
> A person who knowingly executes, or attempts to execute, a scheme or artifice:
> (1) to defraud a state or federally chartered or federally insured financial institution; or
> (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;
> commits a Class C felony.

The defendant was charged by information as follows:

Ahmed Asghar, on or about November 25, 1996, did knowingly execute, or attempt to execute, a scheme or artifice to defraud First of America Bank, a state or federally chartered or federally insured financial institution . . .

(R. 32).

█ When presented with a challenge to the sufficiency of the evidence, we neither judge the credibility of the witnesses nor reweigh the evidence. We look only to the evidence and reasonable inferences therefrom which support the verdict. If there is evidence of probative value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Benton v. State*, 691 N.E.2d 459, 463 (Ind.Ct. App.1998). The defendant contends that although he committed a series of suspicious acts at various banks, these acts were not alone illegal and did not amount to an attempt to defraud the banks. A person attempts to commit a crime when "acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Ind.Code 35–41–5–1. A "substantial step" toward the commission of a crime, for purposes of the crime of attempt, is any overt act beyond mere preparation and in furtherance of intent to commit an offense. *Williams v. State*, 685 N.E.2d 730, 734 (Ind. Ct.App.1997). Whether a defendant has taken a substantial step toward the commission of the crime, so as to be guilty of attempt to commit that crime, is a question of fact to be decided by the jury based on the particular circumstances of the case. *Id.* at 735.

The State presented evidence that the defendant engaged in preparatory conduct with the intent to defraud the bank. In fact, his actions would have been completed had his plan not been derailed by his unexpected arrest. *See Washington v. State*, 517 N.E.2d 77, 79 (Ind.1987) (Where there have been overt acts preparatory to commission of an offense coupled with specific intent, which may be inferred from certain acts, and it may be reasonably inferred that the crime would

have been committed but for some form of involuntary frustration, these acts may be deemed an attempt).

█ The State presented sufficient evidence from which the jury could reasonably infer that the defendant intended to and took substantial steps toward engaging in a check-kiting scheme. Specifically, the defendant opened voice mail boxes using a false name, set up post-office boxes for Hossaini and Javed using the name Ahmed Asghar. When confronted by Detective Clark regarding his identification, the defendant insisted that his name was Ahmed Asghar, when really his name is Rashid Khan. When asked for identification, the defendant provided a counterfeit social security card and passport. Additionally, the defendant helped his accomplices set up several bank accounts during November of 1996. Finally, the defendant and his accomplices applied for checking accounts, including the First of America account, using false addresses and telephone numbers.

Based on the foregoing, we conclude that the State presented sufficient evidence from which the jury could infer that the defendant took substantial steps toward the commission of Fraud on a Financial Institution.

## II. *Evidence of Prior Bad Acts* *Ind.Evidence Rule 404(b)*

The defendant further contends that the trial court erred when it permitted the State to present evidence of the defendant's uncharged prior bad acts. Specifically, he argues that the evidence of his similar transactions at other banks was admitted for the sole purpose of inviting the jury to make the "forbidden inference" in violation of Evid.R. 404(b).

Evid.R. 404(b) provides in relevant part:

**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof or motive, intent, preparation, plan, knowledge, identity, or absence or mistake or accident . . .

Evid.R. 404(b) is almost identical to Federal Rule of Evidence 404(b) and is similarly designed to prevent the jury from assessing a defendant's present guilt on the basis of his past propensities, the so-called "forbidden inference." *Hicks v. State*, 690 N.E.2d 215, 218–19 (Ind.1997).

■ The standard for assessing the admissibility of 404(b) evidence in Indiana is: (1) the court must determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) the court must balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403. *Id.* at 221.

■ Here, the trial court permitted the State to offer evidence of the defendant's other recent dealings with local banks as proof of preparation and plan. The trial court has broad discretion in determining the admissibility of evidence, and we will not reverse the trial court's ruling absent an abuse of discretion. *Benton*, 691 N.E.2d at 463. We see no abuse of discretion under the facts of this case. The evidence of other bank transactions during November of 1996 was relevant and such evidence was not offered for the purpose of showing the defendant's propensity to commit the charged offense. The defendant's actions showed that he had a plan in place to execute a scheme or artifice in order to defraud banking institutions. Furthermore, we do not find that the prejudicial effect of the testimony outweighed its probative value. We affirm the trial court in all respect.

Affirmed.

RUCKER and GARRARD, JJ., concur.