**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARY SPEARS**
Kammen Maryan & Moudy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| SHERARD TAYLOR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1210-CR-794 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Amy Barbar, Magistrate
Cause No. 49G02-1108-FC-59963

**June 12, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Sherard Taylor (Taylor), appeals his conviction for Count I, fraud on a financial institution, a Class C felony, Ind. Code § 35-43-5-8(a)(1).

We affirm.

## ISSUES

Taylor raises one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt that Taylor had the intent to commit fraud on a financial institution.

## FACTS AND PROCEDURAL HISTORY

On May 24 and 25, 2010, Taylor opened checking accounts at both Huntington Bank and Chase Bank in Lawrence, Indiana. Since Taylor was a new account holder at Chase Bank, he received a set of "starter checks" that consequently, did not have his identifying information in the top left corner; instead that area on the starter checks was left blank. (Transcript p. 34).

During this same period, Taylor deposited several checks allegedly written by Derric Patton (Patton) to Taylor into his Chase account. One transaction consisted of Taylor presenting a $250 check and asked the teller to deposit $25 into his checking account, deposit $125 in a separate savings account, and to pay in cash the remainder amount. Taylor also made two separate withdrawals from his Chase account: one for $365 and one for $200. Subsequently, when Chase tried to collect the money from

2

Patton's Flagstar Bank account, Flagstar notified Chase that it could not locate Patton's account, and that there was no further record of Patton's account in their system. Taylor had in his possession checks from Patton that totaled "around $11,000 dollars." (Tr. p. 56).

On May 28, 2010, Taylor made deposits at several Huntington Bank branches in Indianapolis. At each branch, Taylor attempted to complete a "split deposit," where he would present the check and ask for an amount in cash and a certain amount to be deposited into his checking account. (Tr. p. 20). Specifically, he presented check no. 9990, which was a starter check from his Chase Bank account, to teller Ronaldo Guevara at the Lafayette Square branch. The starter check was made payable to Taylor with Donald Sims' (Sims) identifying information written in the top left corner and Sims' name signed on the payor line. Taylor deposited $200 into his account and received $200 in cash back.

That same day, Taylor also presented two more checks from Patton. One check was deposited at Huntington Bank's branch at 71st and Zionsville Road, and the other check was deposited at the bank's Northwest Branch. Taylor received $100 cash back on the deposit of one of the checks.

Finally, Taylor presented another Chase account starter check to Leo Hernandez (Hernandez), a teller at the Huntington Bank's Pendleton Pike branch. This check had Sims' identifying information at the top left corner, was signed by Sims, and made payable to Taylor. Taylor requested a split transaction where part of the $700 check

would be deposited into his account and part would be returned to him in cash. However, Hernandez noticed Taylor had made different deposits at different branches that day, so he reversed the transaction. Hernandez informed Taylor to return the next day to receive his cash from the deposit.

After Taylor left, Hernandez contacted the bank's security officer after learning about Taylor's multiple transactions that day. At that time, the security officer discovered that the purported maker of the check, Donald Sims, was not the account holder. Hernandez was instructed to contact the police if Taylor returned to the bank.

The next day on May 29th, 2010, Taylor returned to the Pendleton Pike branch to collect the money from the previous day's deposit. Hernandez was working the drive-through, and recognized Taylor when Taylor handed Hernandez his driver's license. As instructed, Hernandez advised the bank manager, who called the police. Police arrested Taylor and found Patton's checkbook and other checks drawn on Patton's account and made out to Taylor in Taylor's SUV.

On August 25, 2011, the State filed an Information charging Taylor with Count I, fraud on a financial institution, a Class C felony, Ind. Code § 35-43-5-8(a)(1); Count II, forgery, a Class C felony, I.C. § 35-43-5-2; and Count III, theft, a Class D felony, I.C. § 35-43-4-2. On June 20, 2012, the trial court conducted a bench trial. At the close of the evidence, the trial court found Taylor guilty on all charges.

On September 7, 2012, the trial court held a sentencing hearing. At the hearing, the trial court merged Counts II and III into Count I and sentenced Taylor to two years,

all suspended with one year on probation. Taylor now appeals. Additional facts will be provided as necessary.

<u>DISCUSSION AND DECISION</u>

Taylor contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Sargent v. State*, 875 N.E.2d 762, 767 (Ind. Ct. App. 2007). We will consider only the evidence most favorable to the verdict and the reasonable inferences to be drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. *See id*. at 213. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

To convict Taylor of fraud on a financial institution, a Class C felony, the State was required to prove that Taylor committed the fraud when he:

> knowingly execute[d] or attempt[ed] to execute a scheme or artifice (1) to defraud state or federally charter[ed] federally insured financial institution or (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises.

I.C. § 35-43-5-8.

Taylor argues that the State did not present "any evidence indicating that Patton's checks were forged or uttered by Taylor, and no evidence was presented that contradicted Taylor's claim that he did not write the 'Donald Sims' checks with the intent to defraud."

(Appellant's Br. p. 4-5). Therefore, Taylor maintains that there is no proof that he acted with criminal intent or that he intentionally wrote checks knowing that they were not supported by sufficient funds or would not be honored by the banks.

To establish fraud, the State must prove that Taylor "knowingly" committed the offense. I.C. § 35-42-2-2(b). According to the statute, "[a] person engages in conduct knowingly if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id.*

In *Getha v. State*, 524 N.E.2d 325, 329 (Ind. Ct. App. 1988), Getha opened a checking account with First National Bank of Valparaiso (First National). *Id.* at 326. He deposited large sums of money via checks in the amounts of $5,000, $3,500, and $6,900 into this account. *Id.* The checks were dishonored and First National gave Getha notice that his account was closed. *Id.* Later, Getha proceeded to open two new checking accounts with the Bank of Indiana at Merrillville, each with a deposit of $300. *Id.* He deposited five checks that were drawn from his previously closed account at First National that totaled over $28,000 into these new accounts as well as three other checks. *Id.*

The Bank of Indiana paid out two checks that were drawn from the accounts that amounted to $7,000. *Id.* All eight checks that Getha deposited were dishonored resulting in an overdraft of $6,751 occurred in Getha's personal account. *Id.* Getha gave the Bank of Indiana a check for the total amount he owed drawn from a First Bank of Whiting account, which ended up being dishonored as well. *Id.* On appeal, we held that there

was sufficient evidence supporting Getha's conviction for fraud on a financial institution. *Id*. at 329. We based our decision on:

> a complex scheme of opening up checking accounts with several banks in succession…the implied intent of the scheme was to fraudulently take advantage of the lag time involved in closing accounts and dishonoring checks in order to obtain, as he did, money owned by or under the custody or control of a state or federally chartered or federally insured financial institution.

*Id*.

Taylor's complex scheme, consisting of opening several checking accounts with various banks and depositing checks purportedly coming from Patton's account in a very short period of time, and continuing to go from one bank to the next to deposit checks and receive cash back shows that Taylor knowingly committed fraud on a financial institution.

Although *Getha* did confess to committing fraud while Taylor did not, there is sufficient evidence to support Taylor's conviction. The record shows that he opened accounts at both Chase and Huntington Banks in a period of two days. After opening these accounts, Taylor attempted to deposit $11,000 worth of checks into his Chase account.

After depositing checks from Patton's account that was found to not exist, Taylor went as far as writing Sims' name and address in the top left corner of the starter checks that Taylor received from Chase. Taylor then tried depositing those checks in his Huntington bank account and each time asked for part of the check amount to be returned to him in cash. Due to the several transactions made by Taylor on the same day, the teller

at the Lafayette Square Branch told Taylor to return the next day for his requested cash back.  The police arrested Taylor at the branch that next day, and they found additional checks made payable to Taylor from Patton's account in Taylor's SUV.  (Tr. p. 50).

Taylor asserts that he "has never been a good check writer," and that he filled out the Sims' checks incorrectly and it was all "one big mistake."  (Tr. p. 58-59).  However, this was a mistake that Taylor committed twice in the same day, and he continued writing checks to himself from Sims on the Chase starter checks.  (Tr. p. 59).  Similarly to *Getha*, Taylor went to several different banks on several different occasions in a very short period of time depositing checks and receiving cash back.  Taylor's assertion that he is not a "good check writer," is inconsistent with his actions. (Tr. p. 58). In sum, based on the totality of the evidence before us, we conclude that the trier of fact could reasonably infer that Taylor acted with the intent to commit fraud on a financial institution.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence beyond a reasonable doubt to sustain Taylor's conviction.

Affirmed.

BRADFORD, J. and BROWN, J. concur