## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 28 2017, 7:08 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anne Medlin Lowe
Riley Williams & Piatt, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John McAllister,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 28, 2017

Court of Appeals Case No.
29A02-1702-CR-242

Appeal from the Hamilton
Superior Court

The Honorable Steven R. Nation,
Judge

Trial Court Cause No.
29D01-1610-F5-7824

**Bradford, Judge.**

# Case Summary

[1] Appellant-Defendant John McAllister was arrested after he fraudulently cashed one check and attempted to fraudulently cash a second check on October 11, 2016. McAllister was thereafter charged with Level 5 felony fraud on a financial institution, Level 5 felony attempted fraud on a financial institution, and two counts of Level 6 felony forgery. Following a jury trial, McAllister was found guilty as charged. On January 19, 2017, the trial court entered a judgment of conviction on the two Level 5 felony charges and sentenced McAllister to an aggregate seven-year executed sentence. On appeal, McAllister challenges both the sufficiency of the evidence to sustain his convictions and the appropriateness of his sentence. We affirm.

# Facts and Procedural History

[2] On October 11, 2016, McAllister entered the First Merchant's Bank in Carmel. Upon entering the bank, McAllister sought to cash a fraudulent check in the amount of $1340.23 purporting to be made out to McAllister by Samantha Abshire on behalf of Mill Direct Carpet. After the teller consulted with her manager, the bank cashed the fraudulent check for McAllister.

[3] Mill Direct Carpet, a family owned business owned by Samantha's father, was a customer of the bank. Samantha and her father were the only two individuals who had access to Mill Direct Carpet's checkbook. The funds in the checking account were used for employee payroll and paying bills to suppliers.

McAllister had never worked for Mill Direct Carpet. Samantha did not know McAllister and had never written a check payable to him. In addition, the color of the check that McAllister presented did not match the color of Mill Direct Carpet's checks and the handwriting did not match Samantha's.

[4] After leaving First Merchant's Bank, McAllister went to Salin Bank and Trust in Fishers. Upon entering this bank, McAllister sought to cash a fraudulent check in the amount of $1430.10 purporting to be made out to McAllister by Rick Coffey on behalf of Pet Assure. When McAllister presented the check, Janelle Anderson, the teller who was assisting McAllister, contacted her manager because she knew that there had been an issue earlier in the day with another check purportedly issued by Pet Assure. Anderson indicated that

> As soon as I saw the check, I e-mailed my manager to let him know that there was another one of these checks being presented. I tried to stall by playing around on my computer, just clicking random spots on the screen. And then I brought the gentleman over to our live banker which is like an ATM with Skype. Before I did that, I also e-mailed our communications center team and let them know that I was going to be bringing this gentleman over there so that they could make their team aware to not cash this check. We were over there for a few minutes and then I brought them over, I brought him back over to my desk when they said they could not cash this check, at which point my manager came over and we were able to stall until the police officer got there.

Tr. Vol. II, pp. 141-42.

[5] Pet Assure, a component of Barkefeller's which is owned by Coffey, was a customer of Salin Bank. Barkefeller's provides numerous services to pet owners. Pet Assure is an account Barkefeller's keeps for the specific purpose of reimbursing customers whose animals get sick or otherwise become injured while receiving services at Barkefeller's. The Pet Assure account is not used to pay employees or business expenses, as those expenses come out of the Barkefeller's general account. Company policy provides that customers may be reimbursed no more than $500.00 via an account credit, a credit card reimbursement, or a company check. It is very rare for Coffey to write checks for customer reimbursement, and he issues only approximately two reimbursement checks per month from all three Barkefeller's facilities. Coffey does not know and, prior to trial, had never seen McAllister. Coffey did not write a check to McAllister in the amount of $1430.10. In addition, the handwriting on the check did not match Coffey's and the borders of the check were the wrong color.

[6] Soon after Anderson reported McAllister's behavior, Officer Kyle McFerran was dispatched to Salin Bank in reference to a report of a subject trying to cash a fraudulent check. Upon arriving at the bank and making contact with McAllister, Officer McFerran asked McAllister "what the check was for." Tr. Vol. II, p. 167. McAllister indicated that

> he met an unknown female subject that he did not know at the
> Lafayette Square Mall, spoke to her briefly, gave her his cell
> phone number, and that on today's date, that date, October 11th,
> this unknown female contacted him and asked him if he would

> like to cash a check for her. And then she picked him up,
> brought him to the Salin Bank in Fishers and dropped him off.

Tr. Vol. II, p. 167. When Officer McFerran indicated that McAllister's explanation "didn't make sense … that something wasn't adding up," Tr. Vol. II, p. 167, McAllister

> kind of shifted gears and told me that he was issued the check for
> work he did on the Internet for Pet Assure. He wasn't sure
> whether the check was, the check was mailed to him but he could
> not recall whether he received it that day or the day prior, but
> one of the two. I asked him what kind of work he did on the
> Internet and he refused to tell me.

Tr. Vol. II, p.

McAllister was placed under arrest at the conclusion of his conversation with Officer McFerran. In a search incident to McAllister's arrest, Officer McFerran discovered that McAllister was in possession of a photocopy of the Mill Direct Carpet check which McAllister had fraudulently presented to First Merchant's Bank earlier that day.

On October 12, 2016, Appellee-Plaintiff the State of Indiana ("the State") charged McAllister with Level 5 felony fraud on a financial institution, Level 5 felony attempted fraud on a financial institution, and two counts of Level 6 felony forgery. On December 13, 2016, following a jury trial, McAllister was found guilty as charged. Prior to sentencing, McAllister refused to cooperate with the Hamilton County Probation Department and continued to lie about

his identity and criminal history, despite being linked by fingerprint records to his prior convictions.

[9] McAllister's prior conviction records indicated that, at the time he committed the instant offenses, he had a pending charge of theft under Cause Number 49G08-1610-CM-40322. He was on parole for rape in Cause Number 49G05-9410-CF-142928. Following his release on parole in 2012, McAllister had violated the terms of his parole three times and his parole had been revoked once. McAllister also had prior convictions for public intoxication, theft, and driving while suspended.

[10] At sentencing, the trial court entered a judgment of conviction on the Level 5 felony fraud on a financial institution and Level 5 felony attempted fraud on a financial institution charges. The trial court "affirm[ed] the jury verdict as to the [Level 6 felony forgery charges], but [did] not enter a judgment of conviction … based on the same evidence test." Tr. p. 246. The trial court imposed an aggregate seven-year executed sentence. This appeal follows.

# Discussion and Decision

[11] On appeal, McAllister contends that the evidence is insufficient to sustain his convictions for Level 5 felony fraud on a financial institution and Level 5 felony attempted fraud on a financial institution. He alternatively contends that his aggregate seven-year sentence is inappropriate. We disagree with both contentions.

# A. Sufficiency of the Evidence

[12] McAllister contends that the evidence is insufficient to sustain his convictions for Level 5 felony fraud on a financial institution and Level 5 felony attempted fraud on a financial institution.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

[13] Indiana Code section 35-43-5-8(a) provides that

A person who knowingly executes, or attempts to execute, a scheme or artifice:

> (1) to defraud a state or federally chartered or federally insured financial institution; or
> (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by or under the custody or control of a state or federally chartered or federally insured financial institution by means of false or fraudulent pretenses, representations, or promises;

commits a Level 5 felony.

"A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). Further, "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, the person engages in conduct that constitutes a substantial step toward commission of the crime." Ind. Code § 35-41-5-1(a). "An attempt to commit a crime is a felony or misdemeanor of the same level or class as the crime attempted." *Id*. In challenging the sufficiency of the evidence to sustain his convictions, McAllister does not dispute that the evidence is sufficient to prove that he successfully cashed one fraudulent check and attempted to cash another, but claims only that the evidence is insufficient to prove that he "knowingly executed or attempted to execute a scheme or artifice to defraud" either First Merchant's or Salin Bank. Appellant's Br. p. 15.

Black's Law Dictionary defines a "scheme" as "an artful plot or plan, usu. to deceive others." *Scheme*, BLACK'S LAW DICTIONARY (10th Ed. 2009). It further defines an "artifice" as "a clever plan or idea, esp. one intended to deceive." *Artifice*, BLACK'S LAW DICTIONARY (10th Ed. 2009). Our review of the record reveals that the evidence is sufficient to support a finding that McAllister knowingly engaged in an artful or clever plan which was intended to deceive.

McAllister attempted to cash two different forged checks at two different banks. While he was successful at First Merchant's Bank, he was unsuccessful at Salin Bank. At both banks, McAllister presented checks that were similar to those used by bank customers. These checks, however, contained subtle differences in color from those used on the companies' actual checks. In addition, while the signatures looked similar to the actual signatures of the individuals who were purported to have endorsed each check, the rest of the handwriting did not match that of said individuals. One could reasonably infer from the fact that (1) the fraudulent checks were designed in a manner meant to look similar to the actual checks and (2) endorsing signatures were made to look similar to the signatures of those authorized to endorse such checks, that McAllister had knowingly concocted and engaged in an artful or clever plan which was intended to deceive First Merchant's and Salin Banks. As such, we conclude that the evidence is sufficient to support the jury's determination that McAllister knowingly engaged in an artful or clever plan which was intended to

deceive. McAllister's claim to the contrary amounts to an invitation to reweigh the evidence, which we will not do.[1] *See Stewart*, 768 N.E.2d at 435.

## B. Appropriateness of Sentence

Alternatively, McAllister contends that his aggregate seven-year sentence for Level 5 felony fraud on a financial institution and Level 5 felony attempted fraud on a financial institution is inappropriate. In challenging the appropriateness of his sentence, McAllister asserts that his aggregate seven-year sentence is inappropriate because neither his crimes nor his character can be classified as "the worst of the worst." Appellant's Br. pp. 16, 17.

Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about

---

[1] To the extent that McAllister cites to *Asghar v. State*, 698 N.E.2d 879 (Ind. Ct. App. 1998) and *Getha v. State*, 524 N.E.2d 325 (Ind. Ct. App. 1988) in support of his claim that the evidence is insufficient to prove that he knowingly executed or attempted to execute a scheme or artifice to defraud either First Merchant's or Salin Bank, we note that neither *Asghar* nor *Getha* support McAllister's claim. In *Asghar*, the defendant argued that the evidence was insufficient to prove that he took a substantial step toward defrauding a financial institution or that he "entertained the intent to defraud the bank." 698 N.E.2d at 882. We concluded otherwise and affirmed Asghar's conviction. *Id.* at 883. In *Getha*, the defendant argued that the evidence was insufficient to prove that he fraudulently obtained money from a bank. 524 N.E.2d at 329. We concluded otherwise and affirmed Getha's conviction. *Id.*

the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[18] With respect to the nature of McAllister's offenses, the record reveals that McAllister committed multiple offenses which impacted multiple victims. McAllister successfully defrauded First Merchant's Bank out of $1340.23 and attempted to defraud Salin Bank out of $1430.10. In committing his crimes, McAllister crafted forged checks that jeopardized the assets of two separate small businesses.

[19] As for McAllister's character, the record reveals that McAllister was on parole for a rape conviction when he committed the instant offenses. McAllister had been released to parole in 2012. Since his release on parole, McAllister had violated the terms of his parole three times and his parole had been revoked once. McAllister also had a pending theft charge at the time he committed the instant offenses and had prior convictions for public intoxication, theft, and driving while suspended. In addition, following the conclusion of trial, McAllister refused to cooperate with the Hamilton County Probation Department and continued to lie about his identity and criminal history. Specifically, McAllister used a number of aliases in order to try to mask his criminal behavior and continued to deny using such aliases despite being linked to these aliases by his fingerprints.

It reflects poorly on McAllister's character both that he was on parole at the time he committed the instant offenses and that he had committed numerous other parole violations. It also reflects poorly on McAllister's character that he continues to display an apparent disdain for the laws of this State by committing additional criminal offenses. Upon review, we conclude that McAllister has failed to prove that his aggregate seven-year sentence is inappropriate in light of the nature of his offenses or his character.

# Conclusion

In sum, we conclude that the evidence is sufficient to sustain McAllister's convictions. We also conclude that McAllister's sentence is not inappropriate. Accordingly, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

Najam, J., and Riley, J., concur.